

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUN 1 1 2015

_____ CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on June 11 2015

for Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KITSAP COUNTY DEPUTY SHERIFFS' GUILD, a Washington labor organization, | ) ) ) ) | No. 89344-6 |
| Respondent/Cross-Appellant, | ) ) ) | |
| v. | ) ) | EN BANC |
| KITSAP COUNTY, a Washington municipal corporation, | ) ) ) ) | |
| Appellant/Cross-Respondent. | ) ) ) ) | Filed _____ JUN 1 1 2015 _____ |

FAIRHURST, J.—This case arose from an interest arbitration award that retroactively increased employee health care premiums for a period when there was no enforceable collective bargaining agreement (CBA). The Pierce County Superior Court struck a portion of the award that granted the retroactive increase, ruling that the award (1) was an unconstitutional taking in violation of the due process clause, (2) violated Washington's wage rebate act (WRA), chapter 49.48 RCW, and (3) was arbitrary and capricious. Kitsap County appealed this ruling and we granted direct review. We reverse, finding the arbitration award proper.

The Kitsap County Deputy Sheriffs' Guild (Guild) cross appeals the trial court's decision to deny the award of attorney fees and also seeks attorney fees for this appeal. We affirm the trial court's denial and also deny the Guild's request for attorney fees for this appeal.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The present dispute occurred as a result of the statutory interest arbitration procedures found in the Public Employees' Collective Bargaining Act (PECBA), chapter 41.56 RCW. PECBA governs the collective bargaining negotiations between the Guild, who represents Kitsap County's deputies and sergeants, and Kitsap County (County).

The parties' last CBA was effective from 2008-2009. Under that CBA, deputies were not required to pay for their own health insurance premiums, but were required to pay 10 percent of their dependents' premiums. During negotiations for the 2010-2012 CBA, the County proposed a shift in premiums such that employees would have to pay 3 percent of their own premiums and 15 percent of their dependents' premiums. The Guild rejected this proposal, and the parties were unable to reach an agreement. They sought mediation services from the Public Employment Relations Commission (PERC) as required by PECBA. Mediation was unable to resolve the dispute, and the parties were declared to be at an impasse. Meanwhile,

the 2008-2009 CBA expired and Kitsap County deputies have been working without a contract since the end of 2009.

When a public employer and its uniformed personnel are at an impasse in collective bargaining, PERC may require binding interest arbitration. RCW 41.56.450. Accordingly, the executive director of PERC certified any unresolved issues for statutory interest arbitration. Due to the lengthy negotiation and mediation process, the arbitration panel was not able to hold hearings until October 2012. The arbitration panel held a five day hearing and did not issue its award until February 2013, after the end of the 2010-2012 CBA term, which was the subject of the interest arbitration. Between the expiration of the 2008-2009 CBA and the issuance of the arbitration award, the County maintained the same level of pay and benefits provided under the 2008-2009 CBA as required by PECBA. RCW 41.56.470.

The arbitration award adopted the County's proposal to increase the employees' share of health care premiums such that employees were responsible for 3 percent of their own premiums and 15 percent of their dependents' premiums. The arbitration award applied these increases retroactively to the last six months of the contract period (July 2012-December 2012). To offset the cost of the retroactive increase, the award also granted an additional 0.5 percent increase in wages for the same period as the retroactive premium increase.

The Guild filed suit in Pierce County Superior Court, seeking to have the retroactive increase in health insurance premiums declared invalid. The court granted summary judgment in favor of the Guild, striking the retroactive increase in health care premiums but leaving the remaining award intact. The court ruled that the award amounted to an unconstitutional taking, violated the WRA, and was arbitrary and capricious. The Guild also sought attorney fees, but the court rejected this claim.

The County moved for reconsideration, including a request that the trial court reconsider whether it should remand the entire award to the arbitration panel rather than striking the individual provision. The trial court denied the motion. Subsequently, the County sought direct review, which we granted. The Guild also cross appealed the denial of attorney fees, and we granted review.

## II. ISSUES

A. Does the interest arbitration award violate the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution by retroactively increasing employees' health insurance premiums during a period where the parties had no effective contract?

B. Does the retroactive increase in employee health insurance premiums violate the WRA when there was no expectation of the same level of health benefits?

C. Was the interest arbitration award arbitrary and capricious?

D. Should the Guild be awarded attorney fees in an action challenging an interest arbitration award that has only a corollary effect on wages?

## III. ANALYSIS

This is a case of first impression. We have never addressed whether an interest arbitration award can retroactively increase health care premiums for the period after a CBA expires but before the terms of the new CBA are decided (interim period). We hold that such increases are proper.

The trial court granted summary judgment in favor of the Guild. We review a summary judgment de novo, engaging in the same inquiry as the trial court. *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006).

A.    A retroactive increase in employee health insurance premiums does not amount to a taking under the due process clause

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." The Fifth Amendment applies to the County through the Fourteenth Amendment. *State v. Bobic*, 140 Wn.2d 250, 260, 996 P.2d 610 (2000).

In order for the retroactive increase to constitute a taking in violation of the Fifth Amendment, the deputies must have a property interest in health care benefits. A property interest in a benefit exists if a person has a "legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). A mere "abstract need or desire" or "a unilateral

expectation" of the benefit is insufficient to create a property interest. *Id.*; *see also Godfrey v. State*, 84 Wn.2d 959, 963, 530 P.2d 630 (1975) ("A vested right . . . must be something more than a mere expectation based upon an anticipated continuance of the existing law." (emphasis omitted)).

The parties do not dispute that the 2008-2009 CBA created a property interest in the compensation package for work performed during those years. Nor do they dispute that the arbitration award could have prospectively adjusted their share of health care premiums. This issue depends on whether the deputies had a property interest to the same level of health care premiums from an expired CBA during the interim period. We hold that they did not.

1.      *Neither the 2008-2009 CBA nor RCW 41.56.470 created a property interest to an expired compensation package*

The 2008-2009 CBA did not create a property interest during the interim period because "[a]n expired CBA itself is no longer a 'legally enforceable document.'" *Office & Prof'l Emps. Ins. Trust Fund v. Laborers Funds Admin. Office of N. Cal., Inc.*, 783 F.2d 919, 922 (9th Cir. 1986) (quoting *Cement Masons Health & Welfare Trust Fund v. Kirkwood-Bly, Inc.*, 520 F. Supp. 942, 945 (N.D. Cal. 1981)). Although it does not create a property interest, the expired CBA does retain some legal significance. Under PECBA, neither the County nor the Guild may unilaterally change the conditions of employment during the pendency of an

arbitration proceeding. RCW 41.56.470. Thus, the terms of the expired CBA retain legal significance only because they define the status quo for purposes of the prohibition on unilateral changes. Accordingly, neither party made any unilateral changes since the expiration of the 2008-2009 CBA.

The Guild argues that the terms of the 2008-2009 CBA rolled over into the interim period by operation of RCW 41.56.470, creating "'the floor'" for any new agreements. Corrected Resp't's Br. at 24. According to the Guild, the deputies had a property interest in any benefits earned once services were performed. We reject this interpretation of RCW 41.56.470.

The Guild relies on *Navlet v. Port of Seattle*, 164 Wn.2d 818, 194 P.3d 221 (2008), and *Foley v. Carter*, 526 F. Supp. 977 (D.D.C. 1981). *Navlet* addressed a CBA that required the Port of Seattle to maintain the same level of health and welfare benefits to eligible retirees for life. 164 Wn.2d at 824. After the CBA expired, the port ceased contributions to the trust that funded these retirement benefits, causing the trust to terminate along with the benefits for eligible retirees. *Id.* at 823. We held that the retirement welfare benefits constituted a form of deferred compensation that could not be retroactively terminated once vested. *Id.* at 841. We stated in a footnote that a benefit vested once an employee "renders service in exchange for compensation." *Id.* at 828 n.5 (citing *Leonard v. City of Seattle*, 81 Wn.2d 479, 487,

7

503 P.2d 741 (1972)). Similarly, in *Foley*, the United States District Court for the District of Columbia was confronted with federal legislation that retroactively reduced pay for certain federal employees. 526 F. Supp. at 985. The court held that the employees had a property interest in salary at "the rate admittedly effective during the period when the work was performed." *Id.* Thus, any retroactive decrease to wages already earned violated the due process clause of the Fifth Amendment. *Id.*

Neither of these cases guide our analysis because they do not address the present issue. *Navlet* concerned welfare benefits that were conferred *in a CBA*. 164 Wn.2d at 827. Here, the benefits in dispute were conferred *after the expiration* of the 2008-2009 CBA, when no contract was in place. *Foley* similarly did not concern compensation during an interim period. Rather, *Foley* addressed whether the legislature could retroactively reduce compensation that was granted by statute and earned while that statute was effective. 526 F. Supp. at 985. Because these cases do not answer whether the deputies have a vested property right to a particular level of compensation for work performed when there was no effective CBA, the Guild's approach is not supported by precedent and we reject it.

## 2. *The County's reliance on RCW 41.56.950 is misplaced*

We also reject the County's cited authority. The County argues that PECBA's mandate to maintain the status quo created only a temporary right to the

8

compensation package, meaning that the arbitration award could properly adjust the compensation package retroactively. The County relies on RCW 41.56.950,[1] which authorizes a public employer and a bargaining representative to make a new CBA retroactive to the day after the prior CBA expired. The statute further provides that "all benefits included in the new collective bargaining agreement *including wage increases* may accrue beginning with such effective date." RCW 41.56.950 (emphasis added).

The fundamental objective of statutory construction is to ascertain and carry out the intent of the legislature. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Where statutory language is plain and unambiguous, the statute's meaning must be derived from the wording of the statute itself. *Id.* at 9-10. But where legislative intent is not clear from the face of the language, we may resort to various tools of statutory construction. *Id.* at 10.

---

[1]RCW 41.56.950 provides in full:

> Whenever a collective bargaining agreement between a public employer and a bargaining representative is concluded after the termination date of the previous collective bargaining agreement between the same parties, the effective date of such collective bargaining agreement may be the day after the termination date of the previous collective bargaining agreement and all benefits included in the new collective bargaining agreement including wage increases may accrue beginning with such effective date as established by this section.

The statute's plain language authorized the CBA here to be effective the day after the 2008-2009 CBA expired. RCW 41.56.950. However, the latter portion of the statute references only wage *increases*, making it unclear whether the legislature intended this provision to authorize retroactive *decreases* in compensation packages, such as the increase in health care premiums here. *Id.* Thus, we turn to legislative history.

Prior to the enactment of PECBA, an issue arose regarding whether retroactive wage increases for public employees amounted to unconstitutional gifts or extra compensation for work already performed. In *Christie v. Port of Olympia*, 27 Wn.2d 534, 543-44, 179 P.2d 294 (1947), we addressed this issue and held that a retroactive increase in compensation was not a gift in violation of article VIII, section 7 of the Washington Constitution, or extra compensation for previously rendered services in violation of article II, section 25 of the Washington Constitution. RCW 41.56.950 codified our decision in *Christie*. *Christie* did not address the scenario of retroactive wage and benefit decreases. Moreover, nothing indicates that the legislature enacted RCW 41.56.950 to authorize retroactive decreases. Thus, we reject the County's argument that RCW 41.56.950 permits a retroactive change in the compensation package to the deputies' detriment.

3. *The policy underlying PECBA and analogous case law support a finding that the deputies did not have a property interest to the same compensation package after the 2008-2009 CBA expired*

No case has directly addressed whether, during the interim period, employees have a property interest to the same compensation package that was granted in an expired CBA. We hold that there is no such property interest. The policy behind PECBA guides our decision, which is consistent with our own precedent as well as analogous case law from other states.

Because "the Legislature did not intend statutory interest arbitration to displace the negotiating process . . . it is more appropriate to view interest arbitration not as a substitute for collective bargaining, but as an instrument of the collective bargaining process" itself. *City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604*, 119 Wn.2d 373, 381-82, 831 P.2d 738 (1992). Viewing the arbitration award this way, and recognizing that parties to collective bargaining may agree to make increases to health care premiums retroactive, so too may employees be required to concede to such increases.

The Guild argues that a term determined by statutory interest arbitration is not entitled to the same level of deference as a mutually bargained for term. The Guild bases this argument on the tripartite relationship inherent in collective bargaining negotiations, emphasizing the distinction between the Guild and the deputies. The

Guild represents the deputies in labor negotiations, but the deputies do not themselves participate. Thus, the Guild contends that it is not able to waive the statutory rights that belong to individual deputies. However, because we find no property right to the expired compensation package during the interim period, the Guild would not be waiving any rights.

The United States Supreme Court has found additional policy reasons that guide our decision. The Court recognized that the terms of a prior CBA must necessarily lack force after they expire in order to facilitate labor negotiations. *Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 206, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991). "Although after expiration most terms and conditions of employment are not subject to unilateral change, *in order to protect the statutory right to bargain*, those terms and conditions no longer have force by virtue of the contract." *Id.* (emphasis added). Indeed, as the King County Sheriffs' Office amicus brief notes, if employees had a property interest to the same compensation package from the expired CBA, there would be no incentive for either employers or employees to bargain for a new contract if either party was satisfied with the terms of the expired CBA. Br. of King County Sheriffs' Office at 8.

Our holding that the deputies had no property interest in an expired compensation package during the interim period is consistent with analogous case

law. Although addressing property interests in future benefits, *Conard v. University of Washington*, 119 Wn.2d 519, 834 P.2d 17 (1992), is instructive. In *Conard*, we addressed whether several students at the University of Washington were entitled to the renewal of their athletic scholarships. *Id.* at 530. We held that a legitimate claim of entitlement to renewed scholarships could be created only by the terms of the athletic contract, by mutually explicit understanding, or by substantive procedural restrictions on the part of the decision-maker. *Id.*

Because the duration of the contract was for only one academic year, the contract did not create a protected property interest for all four years of attendance. *Id.* at 530-31. Further, plaintiffs could not establish any mutually explicit understandings, as no assurances were made to plaintiffs that the scholarships would continue, nor did any university rule or policy support entitlement. *Id.* at 533. Finally, we recognized that procedural guaranties created protected property interests if they contained "'substantive predicates'" that guide the discretion of decision-makers to a particular outcome. *Id.* at 535 (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462-63, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)). Because there were no such procedures, the plaintiffs failed to demonstrate a protected property interest in the renewal of their scholarships. *Id.* at 537.

As discussed above, because the 2008-2009 CBA was no longer effective after it expired, it did not create a protected property interest in compensation for work performed in 2010-2012. Further, the parties did not have any mutually explicit understanding that subsequent CBAs would contain the same compensation package. To the contrary, given the nature of the collective bargaining process, both parties knew that any employment terms were subject to change in subsequent CBAs. Finally, there were no procedural guaranties that would give rise to a property interest. RCW 41.56.470 required both parties to maintain the status quo during the pendency of arbitration. However, there are no substantive predicates within this statute that guide the arbitration panel to a particular outcome. The deputies had no property interest to the same compensation package from the expired CBA during the interim period and can show no more than a mere expectation. *See Roth*, 408 U.S. at 577 (mere "abstract need or desire" or "a unilateral expectation" of a benefit is insufficient to create a property interest). The retroactive increase of the deputies' share of health care premiums was proper.

This conclusion is consistent with language from two other state supreme courts. In the context of retroactive CBAs, the Massachusetts Supreme Judicial Court has noted that "there is no reason why a retroactive award or agreement *detrimental* to union members could not be made." *Local 589, Amalgamated Transit*

14

*Union v. Mass. Bay Transp. Auth.*, 414 Mass. 323, 328, 607 N.E.2d 1011 (1993)

(emphasis added). Similarly, in addressing whether a new CBA could retroactively

increase wages during the interim period, the Wisconsin Supreme Court noted:

> The fact that the law requires the parties to maintain the status quo during the period of contract negotiations does not mean that the parties have agreed to a contractual wage agreement for the [interim] period. We believe it would be illogical to conclude that the law requires the parties to adopt an interim wage agreement when that is one of the overriding issues in collective bargaining negotiations. The retroactive wage adjustment, *whether it be up or down*, is a necessary ingredient of such negotiations. The adjusted wage rates can properly be retroactive to the date when the wages became indefinite as a result of the expiration of the old contract and thus became subject to future determination by the execution of a new contract.

*Dep't of Admin. v. Wis. Emp't Relations Comm'n*, 90 Wis. 2d 426, 432-33, 280

N.W.2d 150 (1979) (emphasis added).

The deputies had no property interest to the same compensation package

during the interim period. The expired 2008-2009 CBA did not provide any property

interest, and the parties were not proceeding under a contract during the interim

period. The County maintained the 2008-2009 compensation package only because

it was required to maintain the status quo under PECBA. RCW 41.56.470. Because

the deputies had no property interest during the interim period, any compensation

made during that time was subject to adjustment by the arbitration award. We reverse

the trial court's holding that the interest arbitration award amounted to an unconstitutional taking.

**B. The retroactive increase in employee health insurance premiums did not violate the WRA**

The trial court found that the arbitration award violated the WRA. We reverse and hold that the arbitration award did not constitute an illegal wage withholding for two reasons.

First, the County was authorized by law to withhold the wages. The WRA generally prohibits an employer from receiving any "rebate of any part of wages" owed to an employee, depriving an employee from earned wages, or paying "any employee a lower wage than the wage such employer is obligated to pay." RCW 49.52.050(1), (2). However, the WRA provides for an exception from the general rule under several circumstances, including when the employer is authorized to withhold wages by state law. RCW 49.52.060. Our state law authorizes employers to make deductions from an employees' future wage payments if that employee previously received an overpayment of wages, RCW 49.48.200(1), and the employer provides written notice of overpayment before it withholds future earnings. RCW 49.48.210(10).[2]

___

[2]Because the Guild filed its complaint only two weeks after the release of the arbitration award, the County has not implemented any wage withholding. *See also* Clerk's Papers (CP) at 380 (declaration recognizing that award has not yet been implemented). Although the deputies

As discussed above, the deputies had no property interest in fully paid health care premiums during the interim period, but the County continued to maintain the status quo as required by PECBA. Given the outcome of the interest arbitration, the deputies received an overpayment of wages during the interim period. This is particularly true in light of the 2.5 percent retroactive increase in wages, part of which was expressly designed to offset any burden from the retroactive increase in health care premiums.[3] State law authorized the County to withhold subsequent wages. The County has not violated the WRA.

Second, the legislature's intent for the WRA supports our conclusion. The legislature enacted the WRA "to prevent abuses by employers in a labor-management setting, e.g., coercing rebates from employees in order to circumvent collective bargaining agreements." *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 519-20, 22 P.3d 795 (2001). Nothing here shows that the County abused the collective bargaining process. At no point did it attempt to circumvent a CBA.

---

have notice from the arbitration award, the County will have to provide written notice when it actually implements the award in order to satisfy RCW 49.48.210(10).

[3]The parties dispute whether the retroactive increase was sufficient to cover this burden. The Guild argues that the offset is "inadequate in terms of incontrovertible math" but provides no citation or explanation. Corrected Resp't's Br. at 35. Conversely, Director of Administrative Services for Kitsap County Amber D'Amato testified in a declaration that "[f]or *every* deputy sheriff covered by [the arbitration award], the wage increases . . . offset the Award's retroactive increases in employee contributions to premiums." CP at 382 (emphasis added). D'Amato explains that even a deputy at the bottom of the pay scale who elected for the most expensive health care plan would have still netted about $907.60 in addition to his or her regular take home pay.

During the interim period there was no effective CBA and the County maintained the status quo from the 2008-2009 CBA, as required by statute, until the interest arbitration award determined the terms of the 2010-2012 CBA. The County bargained in good faith and followed all procedures under PECBA.[4]

The Guild argues that the WRA requires the County to receive written consent from the deputies before withholding wages. This is not necessarily true. The WRA provides that it is not "unlawful for an employer to withhold or divert any portion of an employee's wages when required or empowered so to do by state or federal law *or* when a deduction has been expressly authorized in writing in advance by the employee." RCW 49.52.060 (emphasis added). Thus, the WRA does not require written consent if the employer is authorized to withhold wages by law. As discussed

---

[4]Contrary to the dissent's view, we do not claim that the legislature's *sole* purpose in enacting the WRA was to prohibit abuse of the collective bargaining process. Dissent at 4. Undoubtedly, the WRA was enacted to protect employee wages in addition to prohibiting abuse of the collective bargaining process. But the WRA was not enacted to prevent a wage increase or decrease as a result of the collective bargaining process itself. Indeed, the dissent quotes from *Ellerman*, which recognized that the act was intended to ensure employees received what they are entitled to under "'statute, ordinance, or *contract*'" and that "'which the employer is obligated to pay.'" *Ellerman*, 143 Wn.2d at 520 (emphasis added) (internal quotation marks omitted) (quoting *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159, 961 P.2d 371 (1998)). Viewing the arbitration award as an extension of collective bargaining, as we must, it becomes clear that the arbitration award acts as a contract that the parties would have reached themselves. *See Int'l Ass'n of Fire Fighters, Local 1604*, 119 Wn.2d at 381-82 (Interest arbitration is not a substitute for collective bargaining but "an instrument of the collective bargaining process" itself.). Under this contract, the County is not obligated to fully pay for employee health care premiums.

above, the County was authorized and the deputies' written consent was not required.

The County relies on a statutory exception that allows an employer "to withhold deductions for medical, surgical, or hospital care or services." RCW 49.52.060. But as the Guild points out, the County omits the latter portion of the exception, which makes any deductions for medical purposes conditional in that the employer may not derive a financial benefit from the deduction and must "openly, clearly and in due course record[] [the deduction] in the employer's books." *Id.* Because the arbitration award imposed the retroactive increase in the employees' share of health care premiums for the purpose of the employer's financial benefit, the exception does not apply. *See* Br. of Appellant at 4 (the shift in employees' share of premiums "would save nearly a half million dollars for the three-year contract period").

In sum, we reverse the trial court and hold that the arbitration award did not violate the WRA.

C.    The arbitration award was not arbitrary and capricious

RCW 41.56.450 provides that an arbitration award issued pursuant to PECBA "shall be final and binding upon both parties, subject to review . . . solely upon the question of whether the decision of the panel was arbitrary or capricious." We have

defined "arbitrary and capricious" as "willful and unreasonable action, without consideration and a disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration though it may be felt that a different conclusion might have been reached." *Buell v. City of Bremerton*, 80 Wn.2d 518, 526, 495 P.2d 1358 (1972). "The scope of court review should be very narrow, . . . and one who seeks to demonstrate that action is arbitrary or capricious must carry a heavy burden." *Pierce County Sheriff v. Civil Serv. Comm'n for Sheriff's Emps.*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983). We give such high deference to arbitration because public policy in Washington strongly favors the finality of arbitration awards. *Davidson v. Hensen*, 135 Wn.2d 112, 123, 954 P.2d 1327 (1998).

The arbitration award here was not arbitrary and capricious. We have declined to strike an arbitration award as arbitrary and capricious where the arbitrator (1) conducted a two-day long hearing, (2) explained his decision in a 16-page opinion, and (3) provided detailed findings that demonstrated he considered the relevant facts and legal authority. *Fed. Way Sch. Dist. No. 210 v. Vinson*, 172 Wn.2d 756, 769-70, 261 P.3d 145 (2011). Here, the arbitration panel held a five-day long hearing where the County and the Guild presented various witnesses and evidence. The neutral arbitrator explained the panel's decision in a 33-page opinion. That opinion

addressed all of the statutory factors the panel was required to consider. *See* RCW 41.56.465 (providing factors that an arbitration panel shall consider). The opinion also explained the various facts and circumstances the panel relied on in fashioning the award. For example, the panel looked to health care costs for deputies in comparable counties and recognized that 100 percent employer paid premiums are no longer standard or sustainable. Mindful of any potential inequities, the arbitration panel offset the cost of increased health care premiums with a retroactive wage increase. Given our deference to arbitration awards as well as the arbitration panel's careful deliberation, we hold that the award was not arbitrary and capricious.

The Guild argues that the award was arbitrary and capricious because it contained conflicting terms. We reject the Guild's argument for two reasons.

First, the award does not contain terms that conflict with itself. The Guild appears to concede this point and contends that the arbitration award conflicts with terms in the expired 2008-2009 CBA, specifically, terms that provide the right to opt out of any changes to health care benefits. But the 2008-2009 CBA did not contain *express* language providing the right to opt out of changes to health care benefits. Rather, the Guild relies on past practices that it argues are an *implied* part of the 2008-2009 CBA. An award is not arbitrary and capricious merely because its implementation is inconsistent with past practices from an expired CBA.

Second, the practical realities facing the arbitration panel reveal that their actions were not arbitrary and capricious. Due to the lengthy negotiation process, the arbitration panel was not able to hold hearings until October 2012 and did not issue its award until February 2013, after the 2010-2012 CBA term ended. As the Guild argues, it would be impossible to provide an opportunity for the deputies to retroactively opt out of any health care benefits at this point. Further, the arbitration panel considered the Guild's objections regarding the inability of employees to opt out and addressed these concerns by providing a wage increase expressly designed to offset the increased cost of health care premiums. Such deliberation cannot be said to constitute willful or unreasonable action that disregards the facts or circumstances of the case.

The trial court additionally found that the award was arbitrary and capricious because it "incorporates unlawful provisions beyond the lawful authority of the employer." Clerk's Papers at 436. As discussed in the first two issues, the terms of the arbitration award were not unlawful. We reverse the trial court.

D.     Because the underlying action had only a corollary effect on wages, the Guild is not entitled to attorney fees

In its cross appeal, the Guild argues that the underlying suit was a wage recovery action and that the Guild is thus entitled to attorney fees upon prevailing in the trial court. The Guild is incorrect for two reasons. First, the Guild did not prevail

in the underlying action because we now reverse the trial court. Second, as the County notes, this was not a wage recovery action. Rather, this was an action seeking review of an interest arbitration award and any effect on wages was corollary.

We are persuaded by the reasoning in *City of Moses Lake v. International Ass'n of Firefighters, Local 2052*, 68 Wn. App. 742, 748-49, 847 P.2d 16 (1993), where Division Three rejected an award of attorney fees in an appeal from an interest arbitration proceeding. While the court order enforcing the award resulted in a salary increase, the court reasoned that this effect was "corollary, rather than central, to the Legislature's purpose of providing judicial review of the arbitration process." *Id.* at 748. Similarly, the Guild is seeking review of an interest arbitration award. While the trial court ruled in favor of the Guild, any effect on salary was merely corollary.

The Guild asks us to rely on *International Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 42 P.3d 1265 (2002). However, that case concerned grievance arbitration. *Id.* at 47. Notably, we cited to *City of Moses Lake* to explain the unavailability of attorney fees in interest arbitration and noted the important distinction between interest and grievance arbitration in the context of attorney fees. *Id.* at 46-47. Thus, the Guild cannot rely on *International Ass'n of Fire Fighters, Local 46*. We affirm the trial court's denial of attorney fees. Because the Guild has not prevailed on appeal, we deny its request for attorney fees based on this appeal.

## IV. CONCLUSION

We reverse the trial court and hold that the arbitration award (1) did not amount to an unconstitutional taking, (2) did not violate the WRA, and (3) was not arbitrary and capricious. We affirm the trial court's decision to not award attorney fees to the Guild and deny the Guild's request for attorney fees based on this appeal.

Fairhurst, J.

WE CONCUR:

Madsen, C.J.

Owens, J.

Yu, J.

No. 89344-6


GONZÁLEZ, J. (concurring)—I concur with the lead opinion that the Kitsap County Deputy Sheriff's Guild has not shown that the arbitrators' decision was arbitrary or capricious under RCW 41.56.450. However, I also agree with the dissent that wages, once paid, are the property of the employee and that the health care premiums already paid by the county from July through December 2012 were part of the employees' compensation for work done. *See Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 823, 16 P.3d 583 (2001). Given that the retroactive increase in premiums is balanced by a retroactive wage increase, and given that no wages already paid will be clawed back, I find no takings or violation of the wage rebate act, chapter 49.52 RCW. But for the offsetting retroactive wage increase, I would agree with the dissent that the arbitration award was arbitrary or capricious. Given that, I do not join the portion of the lead opinion that might support the proposition that a retroactive wage reduction for work already done imposed by arbitration and not offset by a corresponding benefit is lawful.

With these observations, I concur with the lead opinion.

*Kitsap County Deputy Sheriff's Guild v. Kitsap County*, No. 89344-6 (González, J. concurring)

González, J.

2

No. 89344-6

WIGGINS, J. (dissenting)—The trial court properly struck down the retroactive increase in employee health insurance premiums as arbitrary and capricious because the arbitrator did not consider the statutory authority of the employer as required in statutorily mandated interest arbitration under RCW 41.56.465(1)(a). The award thus violates the wage rebate act (WRA), chapter 49.52 RCW. An employer violates the WRA when it collects or receives "from any employee a rebate of any part of wages theretofore paid . . . ." RCW 49.52.050(1). In this case, after the expiration of the collective bargaining agreement (CBA), Kitsap County (County) (the employer) paid the deputies (the employees) the same wages for the same work for three years. The arbitration award required the deputies to return a portion of their previously earned health insurance premiums to the County, effectively rebating wages previously paid to their employees. We have always recognized that "[h]aving once received his wages in full, the employee is at liberty to do what he will with his earnings." *State v. Carter*, 18 Wn.2d 590, 622, 142 P.2d 403 (1943). I respectfully dissent.[1]

---

[1] Although I would decide the case based solely on the WRA violation under principles of constitutional avoidance, I recognize that taking wages triggers due process concerns. The deputies have a property interest in earned wages. Because we have never held that workers do not have a property interest in wages received for work performed, the lead opinion relies

ANALYSIS

I.   The WRA protects an employee from employer rebates

A. *Plain language*

The meaning of a statute is a question of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* at 9-10.

We begin with the plain language of the statute. The WRA states in relevant part:

> Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who
>
> > (1)  Shall collect or receive from any employee a rebate of any part of wages theretofore paid by such employer to such employee;
>
> . . . .
>
> Shall be guilty of a misdemeanor.

RCW 49.52.050. Because the WRA does not define "wage" or "rebate," the court may look to related statutes and dictionary definitions for meaning. *Campbell & Gwinn,* 146

---

on two inapposite cases, i.e., *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) and *Godfrey v. State,* 84 Wn.2d 959, 530 P.2d 630 (1975), for support. However, *Roth*'s analysis applies only to an employee's property interest in future employment and *Godfrey* addressed whether a "vested right to a common-law bar to recovery" existed. *Godfrey,* 84 Wn.2d at 962. The lead opinion's analysis is inapposite because the deputies are not contending that they had the right to future employment during this period; they are asking to keep what they earned.

Wn.2d at 4 (discussing related statutes); *Garrison v. Wash. State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1976) (discussing dictionary definitions).

We used both related statutes and the dictionary to define the terms "rebate" and "wage" as used in the WRA in *LaCoursiere v. Camwest Development, Inc.*, 181 Wn.2d 734, 742-44, 339 P.3d 963 (2014). Using the Washington Minimum Wage Act, chapter 49.46 RCW, and a dictionary definition of "wage," we asserted that wages encompassed both "'moneys due by reason of employment'" and payment for work performed. *Id.* at 743 (internal quotation marks omitted) (quoting *Flower v. T.R.A. Indus., Inc.*, 127 Wn. App. 13, 34, 111 P.3d 1192 (2005)), 743-44 (holding that "LaCoursiere's bonuses were wages because the bonuses were already paid for work performed"). This definition "gives effect to the legislature's intent to protect money due to employees and comports with the broad definition of 'wage.'" *Id.* at 744.

In *LaCoursiere*, we considered the context of the statute and other provisions in the WRA in concluding that a "rebate occurs when an employee receives less than his or her expected wages because a portion of those wages have returned to the employer or its agent." *Id.* We also considered the plain language in the WRA, RCW 49.52.050(1), and concluded that "a 'rebate' occurs when an employer or its agent collects or receives a portion of an employee's wage after the wage has been paid." *Id.*

Thus, the plain language of the WRA protects an employee from having to rebate wages to his or her employer. The Kitsap County arbitration award violates the WRA if the health insurance premiums paid to the deputies were "wages" and if a

3

"rebate" occurred when the deputies were ordered to retroactively pay for an increase in their health benefit premiums.

### B. The purpose of the WRA is to protect wages

The purpose of the WRA supports its application to these facts. The legislature enacted the WRA "to protect the *wages* of an employee against any diminution or deduction therefrom by rebating, underpayment, or false showing of overpayment of any part of such wages." *Carter*, 18 Wn.2d at 621. Accordingly, the WRA "must be liberally construed to advance the Legislature's intent to protect employee wages." *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159, 961 P.2d 371 (1998).

Rather than effectuating the legislature's purpose by construing the WRA liberally, the lead opinion limits the WRA to prohibiting abuse of the collective bargaining process in reliance on a fragment from one of our prior decisions: "[t]he legislature enacted the wage rebate act 'to prevent abuses by employers in a labor-management setting, e.g., coercing rebates from employees in order to circumvent collective bargaining agreements.'" Lead opinion at 17-18 (quoting *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 519-20, 22 P.3d 795 (2001)). The rest of the paragraph in *Ellerman* clearly reveals that the WRA is not limited to abuse of collective bargaining but protects against "any diminution or deduction" from wages by rebating:

> "[T]he fundamental purpose of the legislation, as expressed in both the title and body of the act, is to protect the *wages* of an employee against any diminution or deduction therefrom by rebating, underpayment, or false showing of overpayment of any part of such wages. The act is thus primarily a protective measure, rather than a strictly corrupt practices statute. In other words, the aim or purpose

4

of the act is to see that the employee shall realize the full amount of the wages which by statute, ordinance, or contract he is entitled to receive from his employer, and which the employer is obligated to pay, and, further, to see that the employee is not deprived of such right, nor the employer permitted to evade his obligation, by a withholding of a part of the wages . . . ."

*Ellerman*, 143 Wn.2d at 520 (alterations in original) (internal quotation marks omitted) (quoting *Schilling*, 136 Wn.2d at 159)). The lead opinion correctly states that abusing the collective bargaining process is protected by the WRA, but importantly, so is "any diminution or deduction" of an employee's wages "by rebating, underpayment, or false showing of overpayment of any part of such wages." *Id.* Here there was no abuse of the collective bargaining process, but a rebate plainly occurred when the arbitration award required the deputies to retroactively pay for the increase in health care premiums that were covered by the County during the three years when there was no collective bargaining agreement in place.

II.    Application of the WRA

   A. *Health insurance premiums are wages*

   "In the absence of a specific statutory definition, words in a statute are given their common law or ordinary meaning." *State v. Chester*, 133 Wn.2d 15, 22, 940 P.2d 1374 (1997).

   In determining whether the health insurance premiums paid by the county constitute "wages" under the WRA, we look to our recent decision in *LaCoursiere*, in which we held that wages encompass both payment for work performed and "'moneys due by reason of employment.'" *LaCoursiere*, 181 Wn.2d at 741-43 (internal quotation marks omitted) (quoting *Flower*, 127 Wn. App. at 34). Liberally construing the WRA,

5

we construed "wages" using *Websters'* broad definition of "wage" to include not only salaries but also "bonuses, once paid for work performed." *Id.* at 741.

Applying the same reasoning to health care premiums, we have also explicitly held that health care premiums are "wages" under Washington's Industrial Insurance Act, Title 51 RCW. *See* RCW 51.08.178; *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 823, 16 P.3d 583 (2001) (recognizing that health care coverage is frequently a significant part of an employee's compensation package and should be considered a wage). Our decision in *Cockle* comports with the dictionary definition of "wage," which includes "amounts paid by the employer for insurance." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2568-69 (2002). Therefore, I would hold that health care premiums are "wages" under the WRA.

The record is clear that the health insurance premiums at issue here were wages because they were paid for work performed. The deputies' wages were established in the 2008-2009 CBA. The terms of that CBA required the County to pay the entirety of the deputies' health insurance premiums and 90 percent of the deputies' dependents' premiums. After the CBA expired, the County was required to maintain the same level of "existing wages, hours, and other conditions of employment" under the provisions of the Public Employees' Collective Bargaining Act (PECBA), chapter 41.56 RCW. RCW 41.56.470. The deputies worked with the reasonable expectation that the County would continue to pay their salaries and health insurance premiums at the statutorily prescribed level; indeed, for three years this is exactly what happened.

6

## B. *The arbitration award effects a rebate*

Having concluded that health insurance premiums are wages, we now consider whether the decrease in the deputies' wages for the payment of retroactive health care premiums constitutes a "rebate." "[A] 'rebate' occurs when an employer or its agent collects *or receives* a portion of an employee's wage after the wage has been paid." *LaCoursiere*, 181 Wn.2d at 744 (emphasis added) (citing RCW 49.52.050(1)). Employees have "[t]he right to a salary for work performed at the rate admittedly effective during the period when the work was performed." *Foley v. Carter*, 526 F. Supp. 977, 985 (D.D.C. 1981); *Navlet v. Port of Seattle*, 164 Wn.2d 818, 828 n.5, 194 P.3d 221 (2008) ("In the employment context, an employee who renders service in exchange for compensation has a vested right to receive such compensation." (citing *Leonard v. City of Seattle*, 81 Wn.2d 479, 487, 503 P.2d 741 (1972))).

In analyzing whether there was a rebate, we must first determine the effective rate of pay during the period when the work was performed. PECBA, chapter 41.56 RCW, governs collective bargaining negotiations for public employees. Specifically, as "uniformed personnel,"[2] the deputies' wages during the interim period are defined as the "existing wages, hours, and other conditions of employment," which were defined by the expired CBA. RCW 41.56.470. Therefore, the expired CBA became the deputies' effective rate of pay. The plain language of PECBA supports this conclusion:

---

[2] "Uniformed personnel" includes "[l]aw enforcement officers as defined in RCW 41.26.030." RCW 41.56.030(13)(a). RCW 41.26.030(18) defines a "law enforcement officer" as "any person who is commissioned and employed by an employer on a full time, fully compensated basis to enforce the criminal laws of the state of Washington." This definition applies to the deputies.

> During the pendency of the proceedings before the arbitration panel, existing wages, hours, and other conditions of employment shall not be changed by action of either party without the consent of the other but a party may so consent without prejudice to his or her rights or position under chapter 131, Laws of 1973.

RCW 41.56.470. The language of RCW 41.56.470 is mandatory; the imperative "shall" does not permit either party to change the existing wages, hours, or conditions of employment without the consent of the other.

The intent and purpose of PECBA support the premise that RCW 41.56.470 controls the effective rate of wages for work performed:

> The intent and purpose of [PECBA] is to recognize that there exists a public policy in the state of Washington against strikes by uniformed personnel as a means of settling their labor disputes; that the uninterrupted and dedicated service of these classes of employees is vital to the welfare and public safety of the state of Washington; that to promote such dedicated and uninterrupted public service there should exist an effective and adequate alternative means of settling disputes.

RCW 41.56.430. The PECBA advances a balance between uniformed employees and employers. So long as the deputies remain employees, the deputies are required to continue working the same hours under the same conditions of employment. Under PECBA, a uniformed employee's right to strike, or engage in a work slowdown or stoppage, is rescinded, but in return PECBA guarantees that existing wages will continue until a dispute is resolved. RCW 41.56.490. The quid pro quo for the deputies' "dedicated and uninterrupted public service" is that the County continues to pay the deputies "existing wages."

As discussed, the deputies' "existing wages" included health insurance payments. Even the lead opinion appears to acknowledge that RCW 41.56.470

8

required the County to maintain "the same level of pay *and benefits* provided under the 2008-2009 CBA." Lead opinion at 3 (emphasis added). We should hold that RCW 41.56.470 governs our analysis of the deputies' effective wages during the interim period because the arbitration proceedings were pending and the statute explicitly prohibits either party from changing the existing wages and conditions of employment.

Because the compensation the County paid the deputies during the interim period is statutorily defined, "[t]he promised compensation for services actually performed and accepted . . . may undoubtedly be claimed." *Butler v. Pennsylvania*, 51 U.S. (10 How.) 402, 416, 13 L. Ed. 472 (1850). The deputies had the right to the wages they received. We conclude that deputies' health insurance premiums are wages and that the deputies received no more than their due. By allowing the County to rebate these wages, the arbitration award violates the WRA.

C. *There was no overpayment of wages*

The WRA authorizes an employer to withhold wages if empowered by state or federal law, such as in the case of an overpayment of wages; however, no exception to the WRA applies here. RCW 49.52.060 authorizes an employer to withhold a portion of an employee's wages when authorized by state or federal law. RCW 49.48.200(1) authorizes the state, a county, or a city to withhold an "overpayment of wages" from a public employee's current wages "as provided in RCW 49.48.210 . . . ." RCW 49.48.210(11)(c) defines an "overpayment" as "a payment of wages for a pay period that is greater than the amount earned for a pay period." The wages paid to deputies were not in any sense "greater than the amount earned" because they were

9

exactly the wages due, i.e., exactly what the law provided they had earned. The deputies were not, as the lead opinion contends, overpaid.[3]

III. Because the arbitration award violated the WRA, it is arbitrary and capricious

We should uphold the trial court's finding that the arbitration award was arbitrary and capricious. PECBA governs our review of the arbitration panel's decision. Under PECBA, the statutorily mandated interest arbitration panel "exercises a state function and is . . . a state agency." RCW 41.56.452. We do not give the panel any "'great deference'" "[b]ecause there is no guaranty that any member of the arbitration panel will have any expertise in labor relations." *City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604*, 119 Wn.2d 373, 381, 831 P.2d 738 (1992). Instead, the superior court reviews the decision of the panel to determine whether its decision was arbitrary or capricious.[4] RCW 41.56.450.

---

[3] In concluding that the deputies were overpaid, the lead opinion fundamentally misconstrues the distinction between statutorily mandated arbitration and binding arbitration arising as the result of a contract voluntarily entered into by parties. *See* lead opinion at 18 n.4 ("Viewing the arbitration award as an extension of collective bargaining, as we must, it becomes clear that the arbitration award acts as a contract that the parties would have reached themselves."). It is true that we treat arbitrator decisions arising out of contract as part of the contract itself. *Kitsap County Deputy Sheriff's Guild v. Kitsap County*, 167 Wn.2d 428, 435, 219 P.3d 675 (2009). The award is then treated like any other contract and can be vacated if it violates public policy. *Id.* However, "[u]nlike grievance arbitration, interest arbitration is not a matter of contract." *Snohomish County Pub. Transp. Benefit Area v. Public Emp't Relations Comm'n*, 173 Wn. App. 504, 510, 294 P.3d 803 (2013) (citing RCW 41.56.450). We review statutorily mandated arbitration that the parties have not bargained for in accordance with the requirements of that statute. Under interest arbitration, we do not treat a panel's award as part of a contract that the parties entered into because the statute mandating the arbitration requires us to determine whether the panel's decision is arbitrary or capricious before the award is considered final and binding. If the panel's decision is arbitrary or capricious then the award is not binding on the parties. RCW 41.56.450.

[4] The application of the arbitrary and capricious standard of review is unique in arbitration under PECBA, and it is significantly different from arbitration created through contract.

10

We have defined "arbitrary and capricious" behavior as "willful, unreasoning, and taken without regard to the attending facts or circumstances." *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 358, 340 P.3d 849 (2015). The "attending facts or circumstances" require the panel to consider "[t]he constitutional and statutory authority of the employer" when making its determination. RCW 41.56.465(1)(a). If the panel issues an award that exceeds the "statutory authority of the employer," then that award is arbitrary and capricious.

I would hold that the arbitration award violates the WRA because under the award the employer receives a rebate of wages earned by the employee. Thus the award by definition was arbitrary and capricious because it failed to consider the prohibitions against an employer's receiving a rebate as set forth in the WRA. I agree with the trial court's determination that the award "incorporates unlawful provisions beyond the lawful authority of the employer and is arbitrary and capricious for that reason."[5] Clerk's Papers at 436.

---

Arbitration awards under the Washington uniform arbitration act are not reviewed to determine if they are arbitrary or capricious, *see* RCW 7.04A.200, .220, .230, .240, and we have expressly declined to review arbitration arising under contract under an arbitrary and capricious standard because of the importance of supporting the finality of bargained for, binding arbitration. *Clark County Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers, Local 125*, 150 Wn.2d 237, 247, 76 P.3d 248 (2003) ("When parties voluntarily submit to binding arbitration, they generally believe that they are trading their right to appeal an arbitration award for a relatively speedy and inexpensive resolution to their dispute."). The application of this more searching review makes sense when we remember that despite the use of the term "arbitration," the panel created by RCW 41.56.450 is in fact a state agency adjudicating a dispute pursuant to a statutory, rather than a contractual, delegation of authority. *See* RCW 41.56.452.

[5] The trial court also found that the award "improperly contains mutually exclusive terms concerning insurance enrollment and is arbitrary and capricious for that reason." I would not reach that issue.

## CONCLUSION

The lead opinion holds that any compensation paid to public employees after the expiration of a collective bargaining agreement can be rebated to the employer by an arbitration award, i.e., an arbitrator has the power to retroactively declare wages to be overpayments. Consequently, employees will not be able to determine the amount of wages they are being paid for protracted periods of time and employers will be allowed to withhold employees' wages months or years after the fact.

For the reasons stated above, I would hold that the arbitration award violates the WRA and affirm the trial court.

I therefore dissent.

_____