FILED
COURT OF APPEALS
DIVISION II

2015 JUL 21 AM 9: 25

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| OLYMPIC TUG & BARGE, INC., | No. 46102-1-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF REVENUE, | PUBLISHED OPINION |
| Respondent. | |

WORSWICK, P.J. — Olympic Tug & Barge, Inc. (Olympic) appeals the superior court's denial of its motion for partial summary judgment and award of summary judgment dismissal to the Department of Revenue (DOR). The superior court ruled that Olympic's activities did not fall under the business and occupation (B&O) tax classification for stevedoring and associated activities set forth in RCW 82.04.260(7). We affirm.

## FACTS

The facts in this case are undisputed. Olympic is a Washington corporation in the business of operating tugboats and barges. Relevant to this appeal, Olympic performs fuel bunkering services, which consist of delivering bunker fuel[1] to commercial vessels in the Puget Sound. Olympic delivers this fuel while the receiving vessel is either tied to a dock or at anchor in a harbor. Olympic's tugboats transport the fuel to the receiving vessel, then pump the fuel through fuel lines into the vessel's fuel tanks.

---

[1] Bunker fuel is the type of fuel burned by ships at sea.

No. 46102-1-II

Olympic has litigated its assessed taxes for several years. It has paid the public utility tax (PUT) since 1994. *See* chapter 82.16 RCW. Olympic sued the DOR for a partial refund of PUT paid on its fuel bunkering revenues for the tax years 2003 through 2008. It argued that it owed only the business and occupation (B&O) taxes for stevedoring and associated activities and not the higher PUT.[2] *See* RCW 82.04.260(7).

Olympic moved for partial summary judgment under CR 56, seeking an order declaring that its fuel bunkering services were subject to the stevedoring tax classification found in RCW 82.04.260(7). After a hearing, the superior court denied Olympic's motion for partial summary judgment. The DOR then moved orally for summary judgment dismissal and the superior court granted this motion. The superior court granted the DOR statutory costs and attorney fees. Olympic appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a trial court's order granting or denying summary judgment de novo.[3] *In re Estate of Hambleton*, 181 Wn.2d 802, 817, 335 P.3d 398 (2014). Summary judgment is

---

[2] Olympic previously appealed taxes assessed on revenue derived from its fuel bunkering activities, arguing it was entitled to a deduction from the PUT as revenues derived from the transportation of commodities. Division One of this court rejected Olympic's position, holding that the bunker fuel was not a commodity. *Olympic Tug & Barge, Inc. v. The Dep't of Revenue*, 163 Wn. App. 298, 301, 259 P.3d 338 (2011), *review denied*, 173 Wn.2d 1021 (2012).

[3] Olympic lists 10 assignments of error. Most of these (assignments of error 1-9) concern the superior court's interpretations of the law. But we review de novo whether the superior court erred in denying Olympic's motion for partial summary judgment and granting DOR's motion for summary judgment dismissal. Thus, the superior court's interpretations of the law are not pertinent to this appeal, and we do not address these individual assignments of error. We may

appropriate where, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *TracFone Wireless, Inc. v. The Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010). Because there are no disputed material facts here, we review de novo the question of law whether Olympic was subject to the stevedoring tax classification. *See Bravern Residential, II, LLC v. The Dep't of Revenue*, 183 Wn. App. 769, 776, 334 P.3d 1182 (2014).

Statutory interpretation is a question of law we review de novo. *Cashmere Valley Bank v. Dep't of Revenue*, 181 Wn.2d 622, 631, 334 P.3d 1100 (2014). We endeavor to effectuate the legislature's intent by applying the statute's plain meaning, considering the relevant statutory text, its context, and the statutory scheme. *Cashmere*, 181 Wn.2d at 631. When a statute includes general terms in conjunction with specific terms, we deem the general terms "only to incorporate those things similar in nature or 'comparable to' the specific terms." *Simpson Inv. Co. v. The Dep't of Revenue*, 141 Wn.2d 139, 151, 3 P.3d 741 (2000). Only if the statute remains ambiguous after this plain meaning analysis do we proceed to look at other sources of interpretation, such as legislative history. *The Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002). We avoid reading a statute in a way that produces absurd results. *Tingey v. Haisch*, 159 Wn.2d 652, 663-64, 152 P.3d 1020 (2007).

---

affirm summary judgment on any ground supported by the record. *Pacific Marine Ins. Co. v. The Dep't of Revenue*, 181 Wn. App. 730, 737, 329 P.3d 101 (2014).

## II. SUMMARY JUDGMENT MOTIONS

Olympic argues that the superior court erred by denying its motion for partial summary judgment and granting the DOR's motion for summary judgment dismissal because Olympic's fuel bunkering activities were subject to the stevedoring tax classification. We disagree.

### A.    *Statutory Framework*

This appeal concerns which of two taxes applies to Olympic's fuel bunkering revenues, the higher PUT or the lower B&O tax. The PUT, found in chapter 82.16 RCW, applies to a number of public service businesses, including tugboat businesses. RCW 82.16.020(1)(f). A "tugboat business" is defined as "the business of operating tugboats, towboats, wharf boats or similar vessels in the towing or pushing of vessels, barges or rafts for hire." RCW 82.16.010(10). The DOR has assessed the PUT on Olympic's fuel bunkering services for years.

The B&O tax statute provides:

> Upon every person engaging within this state in the business of stevedoring and associated activities pertinent to the movement of goods and commodities in waterborne interstate or foreign commerce .... Persons subject to taxation under this subsection are exempt from payment of taxes imposed by chapter 82.16 RCW for that portion of their business subject to taxation under this subsection.

RCW 82.04.260(7). Thus, the B&O tax applies to businesses performing "stevedoring and associated activities," and such businesses are exempt from the PUT. RCW 82.04.260(7).

The statute then defines "[s]tevedoring and associated activities pertinent to the conduct of goods and commodities in waterborne interstate or foreign commerce" as

> all activities of a labor, service or transportation nature whereby cargo may be loaded or unloaded to or from vessels or barges, passing over, onto or under a wharf, pier, or similar structure; cargo may be moved to a warehouse or similar holding or storage yard or area to await further movement in import or export or may move to a consolidation freight station and be stuffed, unstuffed, containerized, separated or

4

otherwise segregated or aggregated for delivery or loaded on any mode of transportation for delivery to its consignee.

RCW 82.04.260(7). Thus, to come under the statute, an activity must be of a type involving the loading or unloading of cargo over, under, or onto a wharf, pier, or similar structure.[4]

Finally, the statute identifies the specific activities included in the definition of "[s]tevedoring and associated activities pertinent to the conduct of goods and commodities in waterborne interstate or foreign commerce":

> Specific activities included in this definition are: Wharfage, handling, loading, unloading, moving of cargo to a convenient place of delivery to the consignee or a convenient place for further movement to export mode; documentation services in connection with the receipt, delivery, checking, care, custody and control of cargo required in the transfer of cargo; imported automobile handling prior to delivery to consignee; *terminal stevedoring and incidental vessel services*, including but not limited to plugging and unplugging refrigerator service to containers, trailers, and other refrigerated cargo receptacles, and securing ship hatch covers.

RCW 82.04.260(7) (emphasis added). In summary, the B&O tax classification exempts certain revenues from the PUT if they are derived from "stevedoring and associated activities." RCW 82.04.260(7). "[T]erminal stevedoring and incidental vessel services" include those specific activities listed in the statute. RCW 82.04.260(7).

B.    *Stevedoring Tax Classification Inapplicable to Olympic*

Olympic argues that under the plain meaning of the stevedoring tax classification, Olympic's fuel bunkering services are "stevedoring 'and associated activities'" because they are

---

[4] Olympic admitted that the fuel was "not loaded onto the vessels by passing the bunker fuel over, onto or under a wharf, pier, or similar structure." CP at 66.

5

"'incidental vessel services.'"[5] Br. of Appellant at 16, 19. The DOR argues that the plain meaning of the stevedoring tax classification does not apply to Olympic's fuel bunkering services. We agree with the DOR.[6]

It is undisputed that Olympic's fuel bunkering services do not involve loading fuel "onto the vessels by passing the bunker fuel over, onto or under a wharf, pier, or similar structure." Clerk's Papers at 66. This renders the entire definition of "stevedoring and associated activities" inapplicable to Olympic because the legislature defined that classification as "all activities of a labor, service, or transportation nature whereby cargo may be loaded or unloaded to or from vessels or barges, passing over, onto or under a wharf, pier, or similar structure." RCW

---

[5] Olympic argued for the first time at oral argument that a recent DOR determination should control our analysis. The determination holds that a port's dockage fees for berthing a vessel are subject to the stevedoring tax classification because they fit the definition of "stevedoring and associated activities," specifically wharfage. Wash. Dep't of Revenue, Determination No. 14-0196, 34 Wash. Tax Dec. 036 (2015). The administrative law judge found that the taxpayer's activities were of a nature "whereby cargo may be loaded or unloaded to or from vessels or barges" because the taxpayer berthed the vessel at a dock before loading or unloading cargo. Revenue Determination No. 14-0196, 34 Wash. Tax Dec. at 39. Furthermore, the administrative law judge held that the berthing activities constituted "wharfage," which was specifically enumerated in the stevedoring tax classification. Revenue Determination No. 14-0196, 34 Wash. Tax Dec. at 39.

Olympic argues that this determination is dispositive here because Olympic's fueling services are equally necessary to the movement of cargo as is vessel berthing. We disagree. As we discuss below, Olympic's activities do not fall under the plain meaning of "stevedoring and associated activities." Moreover, wharfage is not at issue in this case.

[6] Olympic argues that the context surrounding the enactment of RCW 82.04.260(7) should inform part of our plain meaning analysis. But we look to the statutory language, not the legislative history, during a plain meaning analysis. *Cashmere*, 181 Wn.2d at 631; *Campbell & Gwinn*, 146 Wn.2d at 12.

82.04.260(7). Thus, we hold that Olympic's business does not fall within the plain meaning of the definition of "stevedoring and associated activities."[7]

Nevertheless, Olympic argues that the subsection's final sentence, listing types of "stevedoring and associated activities pertinent to the conduct of goods and commodities in waterborne interstate or foreign commerce" applies to Olympic because one such type is "terminal stevedoring and incidental vessel services." Br. of Appellant at 19. Olympic argues that fueling a vessel is an "incidental vessel service" because "without the fuel provided by Olympic's services the vessel, and the cargo with which it has just been loaded, would be unable to move to interstate or foreign destinations." Br. of Appellant at 20. Thus, Olympic argues that fueling a vessel is an "incidental vessel service" that is "pertinent to the conduct of goods and commodities" and falls within the subsection.

But Olympic misreads the statute's plain language. Reading "incidental vessel services" in its statutory context, it is clear that the legislature did not intend to include every service that is incidental to a vessel. First, the phrase "incidental vessel services" does not appear in isolation; instead, it appears as the phrase "terminal stevedoring and incidental vessel services." RCW 82.04.260(7). Because "incidental vessel services" is a general term appearing in conjunction with the specific term "terminal stevedoring," we deem "incidental vessel services" to

---

[7] Olympic argues that we must construe any ambiguities in the stevedoring tax classification in Olympic's favor. DOR argues that we must narrowly construe the stevedoring tax classification because it is an exemption. Because we hold that this statute is unambiguous, we do not resolve this dispute. *See City of Spokane ex rel. Wastewater Mgmt. Dep't v. The Dep't of Revenue*, 145 Wn.2d 445, 452 n.5, 38 P.3d 1010 (2002).

incorporate only "those things similar in nature or 'comparable to'" terminal stevedoring. *Simpson Inv. Co.*, 141 Wn.2d at 151.

Furthermore, we read this phrase in conjunction with the rest of the statutory section. There is no punctuation between "terminal stevedoring" and "incidental vessel services," but semicolons divide the other groups of examples from each other.[8] Thus, the statute's organization shows that "terminal stevedoring and incidental vessel services" is one category of activities, not two. Thus, in context, the word "incidental" modifies the phrase "terminal stevedoring," rather than simply the term "vessel." RCW 82.04.260(7). We conclude that the phrase "terminal stevedoring and incidental vessel services" describes terminal stevedoring and vessel services incidental to terminal stevedoring. RCW 82.04.260(7). It does not broadly describe any services incidental to a vessel.

Second, we read "terminal stevedoring and incidental vessel services" within the context of the entire statutory subsection, which is about "stevedoring and associated activities." RCW 82.04.260(7). As described above, the legislature defined this group of activities as those which involve loading or unloading cargo onto vessels and barges "passing over, onto or under" various structures. RCW 82.04.260(7). Thus, any "incidental vessel service" must fall within this definition, which Olympic's fuel bunkering does not. Although a business need not perform stevedoring to qualify, it plainly must perform a business associated to stevedoring, and the

---

[8] "[1] Wharfage, handling, loading, unloading, moving of cargo to a convenient place of delivery to the consignee or a convenient place for further movement to export mode; [2] documentation services in connection with the receipt, delivery, checking, care, custody and control of cargo required in the transfer of cargo; [3] imported automobile handling prior to delivery to consignee; [4] terminal stevedoring and incidental vessel services, including but not limited to plugging and unplugging refrigerator service to containers, trailers, and other refrigerated cargo receptacles, and securing ship hatch covers." RCW 82.04.260(7).

legislature defined this phrase as relating to the loading and unloading of cargo at a dock or similar structure. Because Olympic's fuel bunkering has no relationship to the loading or unloading of cargo passing over, onto or under a wharf, pier, or similar structure, it does not fit the definition.

Third, we avoid reading the statute to produce the absurd result that anything "incidental" to the movement of cargo is exempt from the PUT. *See Tingey*, 159 Wn.2d at 663-64. Olympic argues that its interpretation is not so broad as to encompass any service related to cargo movement, and that it instead encompasses only "business activities that take place while a ship is in port, and which facilitate the movement of goods and commodities in and out of Washington." Br. of Appellant at 22 n. 10. But were we to adopt Olympic's interpretation, there would be no language in the statute to limit these "incidental vessel services" to those that occur in port. Adopting Olympic's reading of the statute to apply to fuel bunkering would require broadening the exemption to include an extensive list of services "incidental" to waterborne commerce, whether or not they relate to the loading or unloading of cargo. We decline to adopt the broad reading that Olympic urges. *See Olympic Tug & Barge*, 163 Wn. App. at 307.

Thus, we hold that the plain language of the stevedoring tax classification does not apply to Olympic's fuel bunkering. Olympic does not transport cargo over or under a wharf or similar structure, so the definition of "stevedoring and associated activities" does not apply. Moreover, the plain meaning of the phrase "terminal stevedoring and incidental vessel services" does not include all services incidental to a vessel; instead, it includes vessel services incidental to terminal stevedoring. Finally, Olympic's interpretation of the statute would lead to an absurd result, exempting countless "incidental" vessel services unrelated to stevedoring from the PUT,

all under an exemption designed for stevedoring and associated activities. Accordingly, we hold

that the superior court did not err by denying Olympic's motion for partial summary judgment

and granting the DOR's motion for summary judgment dismissal and we affirm the superior

court's order.[9]

Worswick, P.J.

We concur:

Maxa, J.

Lee, J.

---

[9] We do not consider Olympic's assignment of error to the superior court's award of statutory fees and costs to DOR because it does not provide any supporting argument in its brief. RAP 10.3(a)(6); *LK Operating, LLC v. Collection Group, LLC*, 181 Wn.2d 117, 122 n. 4, 330 P.3d 190 (2014). In any event, as the prevailing party DOR is entitled to statutory fees and costs.