# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| HOOD CANAL SAND AND GRAVEL, LLC, a Washington limited liability company,<br><br>Appellant,<br><br>v.<br><br>PETER GOLDMARK, Washington State Commissioner of Public Lands, and Administrator for the Department of Natural Resources; WASHINGTON STATE DEPARTMENT OF NATURAL RESOURCES; and STATE OF WASHINGTON,<br><br>Respondents. | No.  47655-0-II<br><br><br><br><br><br>PUBLISHED OPINION |

WORSWICK, J. — Hood Canal Sand and Gravel LLC (HCSG) appeals the summary judgment dismissal of its claims against the Washington Department of Natural Resources (DNR).  HCSG claims that DNR illegally granted the United States Navy an easement over certain tidal "bedlands" in Hood Canal, which easement restricted development on the bedlands.[1]  HCSG had hoped to lease those bedlands to build a pier for its own project.  The superior court dismissed HCSG's claims against DNR on summary judgment.  HCSG argues that the superior court erred because DNR's cross motion for summary judgment suffered procedural flaws and summary judgment was improper on each of HCSG's claims.  We disagree and affirm the summary judgment dismissal.

---

[1] For simplicity, we refer to all state defendants collectively as "DNR," and all federal defendants collectively as "the Navy."

FACTS

HCSG is a Washington company that owned land on the shoreline of Hood Canal. Its land abutted tidelands known as the "Pit-to-Pier Property." Clerk's Papers (CP) at 4. HCSG planned to develop a marine load-out facility for sand and gravel, which involved building a 1,000-foot pier into Hood Canal. To build this pier, HCSG needed to lease, then build on, bedlands owned by DNR.[2]

In 2003, HCSG applied to Jefferson County for certain permits for the Pit-to-Pier project, including a zoning permit. It also submitted a portion of a Joint Aquatic Resources Permit Application (JARPA) form to DNR and other agencies, seeking to use DNR's state-owned aquatic lands.[3]

Meanwhile, the United States Navy began working with DNR around 2011 to obtain an easement in Hood Canal to "limit uses [of aquatic lands] that are incompatible with military operating areas and Navy mission in Hood Canal." CP at 620. Among these incompatible uses were "the construction of wharves, piers, docks, floating structures and other construction" in the canal. CP at 620. Apparently, one of the Navy's goals in pursuing this easement was to "block [the] Pit-to-Pier" project. CP at 291. In 2012, the Navy filed a JARPA form seeking to obtain an easement over DNR's bedlands adjacent to HCSG's property.

---

[2] "Bedlands" are "lands lying waterward of and below the . . . extreme low tide mark in navigable tidal waters." RCW 79.105.060(2).

[3] According to DNR, the JARPA form HCSG submitted in 2003 was not the proper "Attachment E" form DNR required to initiate an application to lease state lands. CP at 609. Thus, DNR claims it received no application from HCSG to lease the bedlands at any time before 2013.

An initial appraisal valued the easement sought by the Navy at $1,680,000. This sum included the estimated diminution in the value of the bedlands due to the restrictive easement the Navy sought. To calculate this diminution, the appraiser evaluated case studies of other bedlands in Washington burdened by easements. The diminution in the value of the bedlands in the case studies ranged from 30 percent to 85 percent. The appraiser concluded that Case Study A was the most similar to the site, but noted that other case studies were also instructive. Specifically, the appraiser noted that Case Study C, which reflected a much lower diminution in value of bedlands burdened by an easement, involved an easement "which merely imposes an additional layer of protection on a property with very little development potential to begin with." CP at 419. Believing that no single case study was identical to this site, the appraiser estimated that the easement would reduce the bedlands' value by 70 percent, which was the approximate midpoint between the diminutions found in all of the case studies A through F. The appraiser further found that the value of geoduck revenues from the site would be unaffected.

The Navy notified DNR that the Navy was not authorized to acquire land costing more than $750,000 under its "Low-Cost Authority" in 10 USC § 2663(c)(1)(B). CP at 288. The Navy suggested reevaluating the size of the easement or the appraisal so that the cost of the easement would not exceed $750,000. The Navy then reevaluated the appraisal and the case studies. The Navy determined that the most similar case study to the Hood Canal bedlands was Case Study C, which resulted in a 30 percent diminution in value. The Navy reached this conclusion because "the highest and best use of the property changes so little before and after the easement acquisition." CP at 537. The Navy reasoned that regardless of the easement, the bedlands were best used for management of the geoduck harvest and other low-intensity uses,

3

not for the kinds of high-intensity development that the easement would prohibit. Thus, the Navy recommended recalculating the value of the easement with an assumption of a 30 percent diminution in bedlands value. This recalculation resulted in an estimated easement value of $720,000. DNR agreed that this estimate was accurate because the case study it relied on was the "most similar situation to the proposed easement." CP at 611.

The Navy then offered to purchase a 55-year easement over the bedlands for $720,000. DNR accepted the offer and granted the easement in July 2014. The easement achieved the Navy's military goals as well as DNR's conservation goals.

During these negotiations between DNR and the Navy in 2013, HCSG submitted a JARPA form to DNR in the appropriate form. DNR notified HCSG that it was working with another applicant (the Navy) "on an authorization that may preclude your use." CP at 245. The grant of the easement to the Navy ultimately blocked the Pit-to-Pier project.

In August 2014, HCSG filed a complaint in Jefferson County against DNR, the Navy, and individuals associated with both agencies seeking various forms of relief. In an amended complaint, HCSG sought additional relief under federal law. It sought to prove that the federal defendants violated certain federal laws. The Navy removed HCSG's lawsuit to the United States District Court for the Western District of Washington. The district court then granted DNR's Eleventh Amendment motion to dismiss the federal claims against the State due to the State of Washington's sovereign immunity. The district court's ruling stated: HCSG "does not have a 'priority right' to lease the bedlands" because RCW 79.130.010 permitted (rather than required) DNR to lease bedlands to abutting landowners. CP at 108.

HCSG refiled its complaint against DNR in Jefferson County Superior Court, and HCSG's claims against the Navy remained in federal court. In the refiled complaint against DNR in Jefferson County, HCSG sought a declaratory judgment that DNR lacked the authority to execute the easement to the Navy. Specifically, it requested a declaratory judgment "that the Deed Easement violates Washington State laws, United States Codes [sic] and the Washington and United States Constitutions and should be deemed null and void." CP at 124. It also sought a declaratory judgment that HCSG should have been included as a third party to the easement.

HCSG requested further relief under multiple theories. First, it sought three writs: a statutory writ of prohibition preventing DNR from enforcing its easement, a writ of mandamus requiring DNR to include HCSG as an easement third party, and a constitutional or statutory writ of certiorari declaring that the easement was unlawful and that HCSG should be an easement third party. Second, HCSG sought injunctive relief to restrain DNR and the Navy from enforcing the easement in a way that would interfere with the Pit-to-Pier project. Third, it filed a quiet title claim seeking to establish that it has a "right under state law to lease the bedlands adjacent to its property, and that right takes precedence over" the Navy's claim. CP at 129. It also claimed that DNR was "obligated under state law to offer the bedlands adjacent to" HCSG's land to HCSG before granting the Navy an easement over them. CP at 129. Fourth, HCSG claimed that DNR deprived HCSG of due process. Finally, it argued that it "has a property interest in the bedlands," which interest "includes priority over applications by other parties." CP at 130.

HCSG moved for partial summary judgment, and it noted this motion for a hearing on May 1, 2015. In its motion, HCSG purported to request summary judgment solely on the

5

question whether DNR exceeded its statutory authority to grant the easement to the Navy. But its motion argued at length about other issues related to this question, such as whether DNR obtained full market value for the easement as required by law. It also asserted that "[a]butting property owners have a preferred leasing right." CP at 174-75. In its conclusion, it requested the superior court to (1) issue a declaratory judgment that the grant of the easement was illegal, (2) issue a writ of prohibition under RCW 7.16.290 to prohibit DNR from enforcing the easement "as a whole or as against HCSG's Project and Property," or (3) issue a "temporary injunction, permanent injunction, or both, as may be necessary to restrain DNR[] from attempting to enforce" the easement. CP at 187.

DNR responded to this motion for summary judgment on April 20, 2015 (11 days before the summary judgment hearing), and in the same document it filed a cross motion for summary judgment. DNR argued that it was entitled to summary judgment because (1) a declaratory judgment could not be granted in a challenge to DNR's administration or application of a statute; (2) a declaratory judgment could not be granted because the Navy was a necessary party; (3) a writ of prohibition or mandamus was not available; and (4) the only avenue for HCSG to pursue judicial review was a constitutional writ of certiorari, which was not appropriate in this case. DNR also argued that its grant of the easement was legal because it had statutory authority to grant the easement, and it complied with the statute in doing so. As part of this argument, DNR asserted that HCSG had no priority right to lease the bedlands. Finally, DNR argued that HCSG was not entitled to injunctive relief.

6

In its reply, HCSG rebutted DNR's arguments. HCSG did not file a separate motion to strike DNR's response and cross motion. Instead, it wrote the following sentence in its reply: "The Court should strike DNR's Countermotion for Summary Judgment as untimely, and require DNR to bring its own summary judgment in accordance with Rule 56 and its timelines." CP at 723. However, HCSG did not argue that it was prejudiced by any untimely documents or argument.

The superior court heard oral argument regarding the summary judgment motions on May 1. The parties did not submit a transcript of oral argument, but the clerk's notes of the hearing shows that the "[c]ourt inquire[d] of timing for cross claim." CP at 744. The superior court granted summary judgment "on all issues" to DNR. CP at 749. As part of its written ruling, the superior court wrote: "The Federal District Court's conclusion that Plaintiff has no priority right to a lease under RCW 79.130.010 is the Law of the Case." CP at 748. HCSG appeals.

## ANALYSIS

### I. MOTION TO STRIKE

HCSG argues that the superior court erred procedurally by denying its motion to strike DNR's combined response brief and cross motion for summary judgment. We disagree.

A.    *Standard of Review*

HCSG moved to strike DNR's brief because it included an untimely cross motion for summary judgment. We review a superior court's decision to shorten the 28 day period for a summary judgment motion for a manifest abuse of discretion. *State ex rel. Citizens Against Tolls v. Murphy* (*CAT*), 151 Wn.2d 226, 236, 88 P.3d 375 (2004).

7

B.     *Timeliness*

DNR filed its response to HCSG's motion for summary judgment together with its cross motion for summary judgment on April 20, which was 11 days before the scheduled summary judgment hearing. CR 56(c) generally requires a party moving for summary judgment to do so 28 days before the hearing. But either party, including a nonmoving party, may receive summary judgment if no material facts are in dispute. *Patriot Gen. Ins. Co. v. Gutierrez*, 186 Wn. App. 103, 110, 344 P.3d 1277, *review denied*, 183 Wn.2d 1016 (2015). Moreover, a superior court may shorten the 28 day period for a summary judgment motion if there is ample notice and time to prepare. *CAT*, 151 Wn.2d at 236.

As HCSG concedes, a party challenging a deviation from time limits must show prejudice from that deviation. The opposing party must demonstrate prejudice by showing "a lack of actual notice, a lack of time to prepare for the motion, and no opportunity to submit case authority or provide countervailing oral argument." *CAT*, 151 Wn.2d at 236-37.

Here, HCSG has failed to show prejudice from the superior court's decision to allow DNR to file a cross motion for summary judgment 11 days before the hearing. Although HCSG purported to raise only one issue in its summary judgment motion (whether DNR exceeded its statutory authority), HCSG's motion in fact raised several related issues, such as whether DNR obtained full market value for the easement and whether HCSG had a preferred leasing right. DNR's response and cross motion focused on the same issues HCSG's motion for summary judgment raised, including whether HCSG had a right to lease the bedlands and whether DNR had statutory authority to grant the easement. And DNR's cross motion relied on the facts and

legal theories HCSG advanced in its complaint. HCSG does not show prejudice from having to rebut DNR's response to the issues.

Moreover, HCSG had 7 days to reply to the response and cross motion, and it had 11 days to prepare for the hearing. HCSG's reply responded in detail to the arguments DNR raised in its response and cross motion, demonstrating that HCSG had adequate time to respond. HCSG made no argument in its reply that it was prejudiced. In fact, the only reference it made to any alleged untimeliness was a single sentence asking the superior court to strike DNR's motion as untimely. Based on the record before us, HCSG fails to show any prejudice resulting from the superior court's deviation from CR 56's time limits. HCSG has not shown that the superior court abused its discretion by denying its motion to strike DNR's cross motion and allowing DNR to proceed with its cross motion for summary judgment. *CAT*, 151 Wn.2d at 236. Accordingly, this claim fails.

HCSG also argues that the superior court may not deviate from time limits except by a party's motion to shorten time. It argues that because DNR did not move to shorten time before the hearing, the superior court erred by failing to strike its cross motion. But the authority HCSG cites for this proposition does not contain such a rule. *See CAT*, 152 Wn.2d at 236-37 (discussing an order on a motion to shorten time, but not considering whether or holding that an order to shorten time is proper only when a party moves to shorten time). "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Moreover, upon a finding that HCSG's motion was without merit and that no genuine issue of material fact was in dispute, the superior

court could properly have granted summary judgment to DNR even absent its cross motion for summary judgment. *Patriot Gen. Ins. Co.*, 186 Wn. App. at 110. Thus, HCSG's claim fails.[4]

## II. PROPRIETY OF SUMMARY JUDGMENT

HCSG argues that the superior court erred by granting summary judgment because genuine issues of material fact remain concerning whether (1) DNR had the statutory authority to grant the easement to the Navy; (2) HCSG was entitled to a writ of prohibition, mandamus, or statutory or constitutional certiorari; (3) HCSG was entitled to a declaratory judgment; (4) HCSG was entitled to injunctive relief; (5) DNR obtained full market value for the easement; (6) HCSG had a priority or preference lease right or a right to lease the bedlands; (7) the law of the case doctrine was applicable; and whether (8) "all" issues should have been dismissed. We disagree, holding that the superior court properly granted summary judgment dismissing all of HCSG's claims.

A.      *Standard of Review and Legal Principles*

We review a summary judgment de novo, engaging in the same inquiry as the superior court, and we may affirm on any basis the record supports. *Mangat v. Snohomish County*, 176 Wn. App. 324, 328, 308 P.3d 786 (2013). We consider the evidence in the light most favorable to the nonmoving party. *CLEAN v. City of Spokane*, 133 Wn.2d 455, 462, 947 P.2d 1169 (1997).

---

[4] HCSG appears to argue that the superior court erred procedurally by accepting DNR's brief because several issues were "not ripe for summary judgment." Br. of Appellant at 15. But when reviewing a summary judgment, we consider under a de novo standard of review whether any genuine issues of material fact exist. CR 56. Thus, HCSG fails to articulate a procedural objection to DNR's motion. To the extent HCSG is arguing that it needed additional time to develop its case, we note that HCSG did not move to continue the summary judgment hearing. Thus, HCSG's ripeness argument fails.

Summary judgment is appropriate only if there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *CLEAN*, 133 Wn.2d at 462. A material fact is one that affects the outcome of the litigation. *Manna Funding*, *LLC v. Kittitas County*, 173 Wn. App. 879, 887, 295 P.3d 1197 (2013).

Statutory interpretation is a question of law, which we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). We attempt to give effect to the legislature's intent by applying the statute's plain meaning. *Campbell & Gwinn*, 146 Wn.2d at 9-10. When reading a statute for plain meaning, we consider the statutory text, its context, and the statutory scheme as a whole. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). We neither add words to nor subtract words from an unambiguous statute. *Lake*, 169 Wn.2d at 526.

B.    *DNR's Authority To Grant Easement to Navy*

An administrative state agency such as DNR may generally exercise only the powers the legislature has conferred to it by statute and those powers that are necessarily implied in the enabling statute. *Stewart v. Dep't of Soc. & Health Servs.*, 162 Wn. App. 266, 270, 252 P.3d 920 (2011); *Northlake Marine Works, Inc. v. Dep't of Natural Resources*, 134 Wn. App. 272, 282, 138 P.3d 626 (2006). The legislature has granted DNR various types of authority under Title 79 RCW. For example, DNR has authority to grant easements over aquatic lands under chapter 79.110 RCW, to lease bedlands under chapters 79.130 and .135 RCW, and to grant land interests to parties to conserve lands as preserves under chapters 79.70 and .71 RCW. Some of these statutory authorizations overlap: for example, RCW 79.130.010 permits DNR to lease bedlands to an abutting landowner, or to any landowner in limited situations, and RCW 79.135.110

11

permits DNR to lease bedlands to any person for the purpose of shellfish cultivation and aquaculture. The fact that these statutory authorizations overlap does not invalidate either of them. *Echo Bay Cmty. Ass'n v. Dep't of Natural Resources*, 139 Wn. App. 321, 328, 160 P.3d 1083 (2007).

Crucial to this case is DNR's authorization in RCW 79.36.355, which provides:

The department may grant *to any person* such easements and rights in public lands, *not otherwise provided in law*, as the applicant applying therefor may acquire in privately owned lands. No grant shall be made under this section until such time as the full market value of the estate or interest granted together with damages to all remaining property of the state of Washington has been ascertained and safely secured to the state.

(Emphasis added). It is this statutory authorization under which DNR granted the easement to the Navy. HCSG argues that DNR lacked the statutory authority to grant the easement. We disagree.

The language of RCW 79.36.355 is unambiguous. Under the plain language of this statute, DNR has broad authority to grant an easement to any person over public lands, where the easement sought is "not otherwise provided in law." RCW 79.36.355. However, despite this plain language, HCSG argues that chapter 79.110 RCW limits DNR's power to grant easements.

HCSG argues that under RCW 79.110.060, .100, .110, .200, and .300, the legislature narrowly permitted DNR to grant aquatic easements only for "removal of valuable materials; roads, bridges, and trestles; railroads over navigable streams; utilities and/or transmission lines; irrigation, diking, and drainage purposes." Br. of Appellant at 29. It argues that DNR's power to grant easements is limited to this short list of purposes found in these statutes. It contends that the easement DNR granted to the Navy was illegal because it served none of the purposes in those statutes under chapter 79.110 RCW. This argument fails because the grants of authority in

chapter 79.110 RCW do not conflict with or restrict the broad grant of authority in RCW 79.36.355.

In *Echo Bay*, we considered whether one grant of authority in title 79 RCW restricted another. 139 Wn. App. at 325-26, 328. We held that there was no conflict between the provisions. 139 Wn. App. at 328. RCW 79.130.010 permitted DNR to lease bedlands only to the landowner abutting those bedlands, and to a nonabutting landowner only with specific limitations. But RCW 79.135.110 permitted DNR to lease bedlands to "any person" for the purpose of shellfish cultivation and aquaculture. Because each section was a "positive grant of authority," they granted authority over different types of leases without conflicting with one another. *Echo Bay*, 139 Wn. App. at 328. We held that the legislature validly chose to enact different statutes authorizing DNR to lease bedlands in different ways. 139 Wn. App. at 328. Thus, both grants of authority were valid, and we applied their plain meanings. 139 Wn. App. at 328.

Here, HCSG makes an argument analogous to the one the appellants made in *Echo Bay*. It argues that because the legislature granted certain narrow authority for DNR to grant easements in chapter 79.110, it could not *also* have granted DNR expansive authority to grant easements in chapter 79.36 RCW. But as in *Echo Bay*, we hold that the plain language of the two enactments is clear: they are separate grants of authority. Moreover, as in *Echo Bay*, the grants of authority here do not conflict. Chapter 79.110 RCW provides DNR with the authority to grant easements for various rights-of-way. And RCW 79.36.355 provides DNR the authority to grant easements generally where they are not otherwise provided in law. These two

authorities are not in conflict. *Echo Bay*, 139 Wn. App. at 328. Thus, we give effect to both, and we hold that DNR had broad authority to grant an easement under RCW 79.36.355.

HCSG further argues that the statutory maxim expressio unius est exclusio alterius—the expression of one thing implies the exclusion of the other—supports its argument. It argues that the list of purposes for which DNR can acquire an easement in chapter 79.110 RCW means that all other purposes are prohibited. But we do not employ this statutory maxim where, as here, the legislature's intent is clear from the plain meaning of the statute. *O.S.T. ex rel. G.T. v. BlueShield*, 181 Wn.2d 691, 696-97, 700-01, 335 P.3d 416 (2014). Moreover, applying the maxim here to hold that the only easements DNR can grant are those listed in chapter 79.110 RCW would be to give no effect to RCW 79.36.355. This would be contrary to well established rules of statutory construction. *Lake*, 169 Wn.2d at 526. We must give effect to the legislature's words in RCW 79.36.355.

HCSG also cites *Miller v. City of Pasco*, 50 Wn.2d 229, 233-34, 310 P.2d 863 (1957) for the proposition that a specific enumeration of powers always takes precedence over a general grant of powers. In *Miller*, our Supreme Court applied the canon of statutory interpretation that "where general powers are granted with specific powers enumerated, the general powers are modified, limited, and restricted to the extent of the specific enumeration." 50 Wn.2d at 233-34. But *Miller* is easily distinguished. In that case, our Supreme Court construed a single statute that began by appearing to provide plenary power to a city, but the statute then listed only certain specified powers. 50 Wn.2d at 234.

Here, there is no statute granting DNR plenary powers with specific powers enumerated; instead, chapter 79.110 RCW enumerates specific powers to grant certain easements, and

14

separately, RCW 79.36.355 confers DNR authority to grant easements that are not otherwise provided in law. To use the statutory interpretation tool in *Miller* would be to eliminate the plain language of RCW 79.36.355, which evinces a very clear legislative intent to permit DNR to grant *all* easements it wishes to convey which are "not otherwise provided in law." We give effect to this plain language without adding to or subtracting from it. *Lake*, 169 Wn.2d at 526.

HCSG further argues that statutes authorizing DNR to grant certain bedlands leases restrict its authority to grant easements. This argument fails, because DNR did not grant the Navy a lease; it granted the Navy an easement. The statutes authorizing DNR to grant leases in chapter 79.130 RCW, and the limitations contained therein, simply do not apply.[5]

Finally, the parties disagree about the relevant legislative history. We do not reach these arguments, because we hold that RCW 79.36.355 is unambiguous. *Campbell & Gwinn*, 146 Wn.2d at 12.

In short, we hold that the plain language of RCW 79.36.355 provided DNR with the authority to grant easements over public lands generally. Therefore, DNR did not violate the law when it granted the Navy an easement. Because this issue is a question of law, the superior court properly granted summary judgment on it. DNR did not exceed its statutory authority in granting the Navy an easement under RCW 79.36.355.

---

[5] HCSG also argues that DNR was required to obtain specific legislative approval for this easement, citing RCW 79.130.050 and .060. In 1987, the legislature amended chapter 79.130 RCW specifically to allow DNR to lease bedlands in Port Gardner Bay to the Navy. LAWS OF 1987, ch. 271, §2. RCW 79.130.060. HCSG therefore argues that DNR was required to seek a legislative amendment for approval to grant the Navy an easement in Hood Canal. This argument fails. This case concerns an easement, not a lease, and RCW 79.36.355 grants broad authority to DNR to convey easements.

C.    *Means of Judicial Review*

HCSG argues that the superior court erred by ruling that a constitutional writ of certiorari was its only avenue for judicial review.  It argues that the superior court erred by dismissing its requests for a writ of prohibition, mandamus, or a statutory writ of certiorari, and its claims for a declaratory judgment and injunctive relief.  We disagree.  The superior court properly dismissed HCSG's requests for writs of prohibition, mandamus, statutory certiorari, declaratory judgment, and injunctive relief because they were not appropriate means for review of DNR's action here.  And because HCSG fails to show any genuine issue of material fact that DNR acted illegally or arbitrarily and capriciously in granting the easement, the superior court properly dismissed its claim for a constitutional writ of certiorari.

Washington law provides three avenues of appeal from an administrative agency's decision: (1) a statute that authorizes appeal, (2) a statutory writ of certiorari under RCW 7.16.040, and (3) a constitutional writ of certiorari, which employs a court's "inherent constitutional power to review 'illegal or manifestly arbitrary and capricious action violative of fundamental rights.'"  *Pierce County Sheriff v. Civil Service Comm'n of Pierce County*, 98 Wn.2d 690, 693, 658 P.2d 648 (1983) (quoting *State ex rel. DuPont-Fort Lewis Sch. Dist. 7 v. Bruno*, 62 Wn.2d 790, 794, 384 P.2d 608 (1963)).

1.  *Writ of Prohibition*

HCSG argues that it was entitled to a writ of prohibition preventing DNR from enforcing the easement.  We disagree.

The "writ of prohibition," RCW 7.16.290 et seq., "arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction

of such tribunal, corporation, board or person." RCW 7.16.290. A writ of prohibition is a drastic measure, which a court may issue only when two conditions are met: (1) the party subject to the writ is acting with a "[t]otal and inarguable absence of jurisdiction," and (2) the party seeking the writ does not have a plain, speedy, and adequate remedy in law. *Barnes v. Thomas*, 96 Wn.2d 316, 319, 635 P.2d 135 (1981); *Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1*, 177 Wn.2d 718, 722, 305 P.3d 1079 (2013).

Here, HCSG has failed to show that DNR acted in total and inarguable absence of its jurisdiction when it granted the easement to the Navy. It, therefore, cannot show that it was entitled to the drastic remedy of a writ of prohibition.

2. *Writ of Mandamus*

HCSG argues that the superior court erred by dismissing its request for a writ of mandamus.[6] We disagree.

A writ of mandamus compels performance of a governmental duty. *Land Title of Walla Walla, Inc. v. Martin*, 117 Wn. App. 286, 289, 70 P.3d 978 (2003). Like a writ of prohibition, a writ of mandamus is an extraordinary remedy. *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994).

Mandamus requires the satisfaction of three elements: (1) the party subject to the writ is under a clear duty to act; (2) the applicant has no plain, speedy and adequate remedy in the ordinary course of law; and (3) the applicant is beneficially interested. RCW 7.16.160, .170;

---

[6] HCSG also appears to argue that the superior court erred for dismissing this claim on summary judgment because HCSG did not move for summary judgment on it. But DNR did move for summary judgment dismissing this claim. Thus, the superior court properly considered the issue for summary judgment.

*Eugster v. City of Spokane*, 118 Wn. App. 383, 402, 76 P.3d 741 (2003). A writ of mandamus is appropriate where the plaintiff shows there is a clear duty to act and the duty is ministerial, not discretionary. *Seattle Times Co. v. Serko*, 170 Wn.2d 581, 589, 243 P.3d 919 (2010). An act is ministerial when the law "'prescribes and defines the duty to be performed with such precision and certainty *as to leave nothing* to the exercise of discretion or judgment.'" *SEIU Healthcare 775 NW v. Gregoire*, 168 Wn.2d 593, 599, 229 P.3d 774 (2010) (internal quotation marks omitted) (quoting *State ex rel. Clark v. City of Seattle*, 137 Wash. 455, 461, 242 P. 966 (1926)).

HCSG requested a writ of mandamus to require DNR to include HCSG as an easement third party. HCSG failed to present any evidence or argument, either in its reply on summary judgment or in its brief on appeal, to establish that DNR was under an obligation to make HCSG a third party to the easement with the Navy. Because HCSG failed to establish that it was entitled to a writ of mandamus, the superior court properly granted summary judgment on this claim.

3. *Statutory Writ of Certiorari*

HCSG argues that the superior court erred by dismissing its request for a statutory writ of certiorari. We disagree.

A statutory writ of certiorari is a party's only avenue to appeal an agency's decision where the agency exercises judicial or quasi-judicial functions. RCW 7.16.040; *Saldin Sec. v. Snohomish County*, 134 Wn.2d 288, 306, 949 P.2d 370 (1998) (Talmadge, J., concurring). Here, however, HCSG cites no facts and makes no argument supporting the notion that DNR exercised any judicial or quasi-judicial functions. Therefore, we affirm the summary judgment dismissal of HCSG's request for a statutory writ of certiorari.

4. *Declaratory Judgment*

HCSG argues that the superior court erred by determining that declaratory judgment was improper and granting summary judgment. We hold that the superior court properly dismissed this claim.

Under the Uniform Declaratory Judgments Act (UDJA), courts may "declare rights, status and other legal relations" between parties. RCW 7.24.010. Declaratory judgments are proper "'to determine the facial validity of an enactment, as distinguished from its application or administration.'" *Bainbridge Citizens United v. Dep't of Natural Resources*, 147 Wn. App. 365, 374, 198 P.3d 1033 (2008) (quoting *City of Federal Way v. King County*, 62 Wn. App. 530, 535, 815 P.2d 790 (1991)). Declaratory judgments are not available where a party seeks to determine whether an agency properly applied or administered a law when it performed a discretionary act. 147 Wn. App. at 375.

Here, HCSG was not entitled to a declaratory judgment that DNR lacked the authority to grant the easement because we hold that RCW 79.36.355 authorized DNR to grant the easement.[7] We do not engage in construction of unambiguous statutes. *Bainbridge Citizens United*, 147 Wn. App. at 375. Thus, summary judgment was proper because HCSG was not

---

[7] DNR argues that summary judgment was proper on this claim because declaratory judgment is not an available remedy where, as here, HCSG sought to determine whether an agency properly applies or administers a statute. We hold that the superior court properly dismissed the declaratory judgment claim because DNR had the statutory authority to grant the easement. Thus, we do not categorically hold that HCSG's claim was barred as an improper UDJA action. Nor do we reach HCSG's argument that it challenged the "construction" of any statute, rather than challenging DNR's application or administration of a statute. Br. of Appellant at 38.

entitled to a declaratory judgment on the construction of the unambiguous statute under which

DNR granted this easement.[8]

     5. *Injunctive Relief*

     HCSG argues that the superior court erred by summarily dismissing HCSG's request for

a preliminary injunction. We disagree.

     A party is entitled to injunctive relief if three criteria are met. First, the party must have a

clear legal or equitable right. *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792,

638 P.3d 1213 (1982). In determining whether the party has a clear legal or equitable right, we

look to the party's likelihood of success on its claim. *Tyler Pipe Indus.*, 96 Wn.2d at 793.

Second, the party must have a well-grounded fear of an immediate invasion of that right. *Tyler

Pipe Indus.*, 96 Wn.2d at 792. Third, the party must show that the acts against which it seeks an

injunction either already are resulting in or will result in actual and substantial injury. *Tyler Pipe

Indus.*, 96 Wn.2d at 792.

     Here, for the reasons stated below, HCSG cannot show that it has a clear legal or

equitable right. We hold that DNR had the authority to grant the easement to the Navy;

therefore, HCSG was not likely to succeed on its claim. *Tyler Pipe Indus.*, 96 Wn.2d at 793.

Moreover, if HCSG's argument is that it had a clear legal or equitable right to lease the bedlands

---

[8] HCSG argues that the superior court erred by ruling that the Navy was a necessary party, and therefore ruling that declaratory judgment was unavailable. Although this ruling appears to be erroneous, it is irrelevant. The superior court's reasoning on summary judgment is not pertinent because we review all issues de novo. *Olympic Tug & Barge, Inc. v. Dep't of Revenue*, 188 Wn. App. 949, 952 n.3, 355 P.3d 1199 (2015). Because we hold that HCSG was not entitled to a declaratory judgment, we need not reach the question whether the superior court properly found that the Navy was a necessary party.

now burdened by the easement, this argument fails. As discussed below, HCSG never had a right to lease the bedlands. DNR had the discretion to lease the bedlands to HCSG, but it had no obligation to do so. Therefore, there is no genuine issue of material fact about whether HCSG could be entitled to injunctive relief.

      6. *Constitutional Writ of Certiorari*

Constitutional writs of certiorari are issued under the courts' inherent constitutional power to review "'illegal or manifestly arbitrary and capricious action violative of fundamental rights.'" *Pierce County Sheriff*, 98 Wn.2d at 693 (quoting *DuPont-Fort Lewis Sch. Dist. 7*, 62 Wn.2d at 794). Washington courts have defined "arbitrary and capricious" to mean "'willful and unreasonable action, without consideration and a disregard of facts or circumstances.'" *Kitsap County Deputy Sheriffs' Guild v. Kitsap County*, 183 Wn.2d 358, 373, 353 P.3d 188 (2015) (plurality opinion) (quoting *Buell v. City of Bremerton*, 80 Wn.2d 518, 526, 495 P.2d 1358 (1972)). A decision is not arbitrary and capricious where it is based on disputed evidence, so long as it is indeed based on evidence. *See Saldin Sec.*, 134 Wn.2d at 297. A party seeking to prove arbitrary and capricious action bears a heavy burden. *Kitsap County Deputy Sheriffs' Guild*, 183 Wn.2d at 373. "'Where there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration though it may be felt that a different conclusion might have been reached.'" *Kitsap County Deputy Sheriffs' Guild*, 183 Wn.2d at 373 (quoting *Buell*, 80 Wn.2d at 526).

When an agency undertakes illegal or manifestly arbitrary and capricious action that violates fundamental rights, the court may issue a constitutional writ of certiorari. A court's review for a writ of certiorari is not full appellate review, but is instead based on the

21

administrative record. *City of Bellevue v. E. Bellevue Cmty. Council*, 138 Wn.2d 937, 943, 983 P.2d 602 (1999). HCSG fails to show that any of DNR's actions were illegal or manifestly arbitrary and capricious. As explained above, DNR had the statutory authority to grant the easement to the Navy under RCW 79.36.355. And as explained below, DNR's determination of full market value of the easement was not illegal or arbitrary and capricious. Therefore, the superior court properly dismissed HCSG's request for a constitutional writ of certiorari because HCSG failed to show that DNR's grant of the easement was illegal or manifestly arbitrary and capricious.

HCSG's only argument about the constitutional writ of certiorari is that, because HCSG did not seek summary judgment on that claim, the superior court erred by granting summary dismissal of its request for the writ. But DNR sought summary judgment on this issue. Because a constitutional writ of certiorari was HCSG's only avenue for judicial review here, and because no genuine issues of material fact existed precluding the entry of summary judgment on this point, the superior court properly granted DNR's summary judgment.

7. *Conclusion: Means of Judicial Review*

In summary, we hold that the superior court did not err by dismissing HCSG's claims for a writ of prohibition or mandamus, a statutory writ of certiorari, a declaratory judgment, or injunctive relief. As stated above, DNR had the authority to grant the easement under RCW 76.36.355. We proceed below to analyze whether there are any genuine issues of material fact

establishing that DNR acted illegally or arbitrarily or capriciously in granting the easement, which would entitle HCSG to a constitutional writ of certiorari.[9]

D.     *Full Market Value*

HCSG argues that the superior court erred by granting summary judgment dismissal because genuine issues of material fact remained about the full market value of the easement. We disagree.

RCW 79.36.355 requires DNR to obtain the "full market value" of any easement it grants. The statute does not define full market value. Neither party advances case law interpreting "full market value" for purposes of RCW 79.36.355, nor are we aware of any. However, as explained above, HCSG's only avenue of judicial review is in seeking a constitutional writ of certiorari. To do so, it must show that agency action was illegal or manifestly arbitrary and capricious. Therefore, HCSG must show a genuine issue of material fact that DNR's determination that $720,000 constituted the easement's full market value was illegal or arbitrary and capricious.

HCSG argues that there is a material issue of fact that the easement's full market value was greater than $720,000 because the initial appraisal found that the easement was worth

---

[9] The question of whether DNR acted properly in granting the easement is separate from the question of whether it had the statutory authority to do so. We use only the constitutional writ of certiorari standard to determine whether DNR properly granted the easement.

We hold that HCSG could not obtain a declaratory judgment on whether DNR properly applied RCW 79.36.355 when granting the easement, such as whether it accepted full market value. *See Bainbridge Citizens United*, 147 Wn. App. at 375. The agency's determination of full market value is quintessentially a challenge to a statute's application or administration; the UDJA does not permit such a challenge. 147 Wn. App. at 375. Thus, the only means of review of the determination of full market value is a constitutional writ of certiorari.

23

$1,680,000. A decision is not arbitrary and capricious where it is based on evidence. *Saldin Sec.*, 134 Wn.2d at 297. Here, DNR accepted the $720,000 valuation based on evidence that a case study estimating a 30 percent diminution in value of the bedlands was more similar to the case at hand than the appraiser's estimate of a 70 percent diminution in value. Thus, because DNR's decision was based on evidence, HCSG fails to show there are genuine issues of material fact about whether DNR's determination of full market value was arbitrary and capricious, and this claim fails.

In summary, we hold that HCSG has failed to show there are questions of material fact regarding whether DNR's acceptance of $720,000 as full market value was illegal or manifestly arbitrary and capricious. Thus, we affirm the superior court's grant of summary judgment on this issue. HCSG was not entitled to a constitutional writ of certiorari.

E.      *Priority or Preference Lease Right*

HCSG next argues that the superior court erred by granting summary judgment on the issue whether it had a priority or preference right to lease the bedlands. The existence of such a right could have entitled HCSG to injunctive relief, a quiet title claim, or a due process claim. We hold that HCSG had no such priority or preference right.

HCSG argues only that the superior court erred by granting summary judgment on this issue because HCSG did not seek summary judgment about any right it had to lease state bedlands. HCSG further argues that the superior court did not receive any briefing on the issue of whether HCSG had a priority right to lease state bedlands. But in its opening motion, HCSG claimed it had a "preferred leasing right." CP at 175. And in its cross motion for summary judgment, DNR sought to dismiss this claim. Thus, the issue was properly before the superior

court, and the superior court received briefing on it. Also, HCSG fails to advance any facts or argument about why summary judgment was improper on this claim. It does not argue that any genuine issue of material fact exists; it argues merely that the superior court dismissed this issue without briefing. Thus, it fails to show that summary judgment was improper on this claim.

Moreover, HCSG did not have a preferred leasing right as a matter of law. RCW 79.130.010(1) permits DNR to lease bedlands to the abutting owners, but it does not require DNR to do so. RCW 79.130.010(1) is a statutory grant of authority to DNR, not an entitlement to HCSG. *Echo Bay*, 139 Wn. App. at 329.

Similarly, WAC 332-30-122(1) allows DNR to lease bedlands to an abutting landowner, but it does not require DNR to do anything, nor does it entitle abutting landowners like HCSG to any special status. And Washington courts have long recognized that landowners have no property right in bedlands adjacent to their property. *Harris v. Hylebos Indus., Inc.*, 81 Wn.2d 770, 773-74, 505 P.2d 457 (1973); *Eisenbach v. Hatfield*, 2 Wash. 236, 245, 26 P. 539 (1891). Therefore, the law allows DNR to grant a lease, but it does not give HCSG any rights, and HCSG's argument that it possessed a preferred leasing right fails.

F.      *Law of the Case*

HCSG argues that the superior court erred by relying on the law of the case doctrine to determine that HCSG had no priority right to lease bedlands. We do not reach this argument, because it is irrelevant to this appeal. On review of summary judgment, the superior court's interpretations of the law are irrelevant, because we review all issues de novo. *See Olympic Tug & Barge, Inc. v. Dep't of Revenue*, 188 Wn. App. 949, 952 n.3, 355 P.3d 1199 (2015).

G.      *Dismissal of "All" Issues*

Finally, HCSG argues that the superior court erred by granting summary judgment on "all" issues, despite the fact that HCSG's due process claim and quiet title claim were not briefed and neither party requested summary judgment on them. Br. of Appellant at 19. We disagree.

HCSG argues that the superior court erred because HCSG's due process and quiet title claims were not discussed in either party's briefs on summary judgment. HCSG's due process claim is based on HCSG's allegation that it "has a property interest in [the ]bedlands," which interest "includes priority over applications by other parties." CP at 130. And its quiet title claim sought to prove that HCSG had a right to lease the state bedlands.

As stated above, HCSG failed to show it had any conceivable property interest in the state-owned bedlands. Therefore, there are no genuine issues of material fact that could sustain HCSG's due process claim or quiet title claims. Thus, we affirm the superior court's grant of summary judgment on those claims under a de novo standard. Moreover, HCSG fails to argue that there are any genuine issues of material fact on either of these claims. Instead, its argument is exclusively that the superior court erred procedurally when it dismissed these claims. Thus, HCSG fails to show that there are any genuine issues of material fact that would justify reversing summary judgment.

Additionally, HCSG's argument that the superior court erred procedurally by dismissing these claims fails. HCSG relies on *Davidson Serles & Associates v. City of Kirkland*, 159 Wn. App. 616, 638, 246 P.3d 822 (2011) for the proposition that a superior court errs by dismissing "all" claims when at least one of the pleaded claims is not raised or argued in the motion for summary judgment. But *Davidson* is distinguishable. In that case, the defendant moved for

26

summary judgment on "all" issues, but it did not mention the plaintiff's claim of "spot zoning" in its motion or in argument before the court. 159 Wn. App. at 638. In fact, the defendant told the superior court that the spot zoning claim was *not* a claim on which it desired summary judgment. 159 Wn. App. at 638 n.15. Thus, Division One of this court held that it was error to dismiss the claim. Here, by contrast, both HCSG's motion for summary judgment and DNR's cross motion adequately addressed whether HCSG had a property right in the bedlands, which was central to both the due process and quiet title claims. Therefore, the superior court did not err by dismissing "all" claims.

H.      *Conclusion*

The superior court properly granted summary judgment dismissing all of HCSG's claims. DNR had the statutory authority to grant an easement to the Navy. HCSG was not entitled to a constitutional writ of certiorari because DNR did not act illegally or arbitrarily and capriciously in determining full market value. HCSG had the right to pursue a writ of prohibition only if it showed a "[t]otal and inarguable absence of jurisdiction." *Barnes*, 96 Wn.2d at 319. It failed to do so. It could pursue a writ of mandamus only if it showed that DNR was under a clear duty to act to make HCSG a third party to the easement, which it was not. Nor was HCSG entitled to a declaratory judgment, because DNR had the authority to grant the easement and HCSG cannot challenge DNR's discretionary application of the statute in a declaratory judgment (that is, it cannot obtain a declaratory judgment regarding DNR's determination of full market value). HCSG failed to show its likelihood of success on the merits or that it had any property right in the state-owned bedlands, so the superior court properly denied it injunctive relief. The superior court did not err by considering DNR's response and cross motion because HCSG was not

prejudiced, and it did not err by dismissing "all" claims because HCSG had no property right in the bedlands, and its quiet title and due process claims required showing such a property right. Consequently, we affirm the summary judgment dismissal.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Lee, J.